# IN THE SUPREME COURT OF TEXAS

════════════

No. 11-0934

════════════

LIBERTY MUTUAL INSURANCE COMPANY, PETITIONER,

v.

RICKY ADCOCK, RESPONDENT,

v.

TEXAS DEPARTMENT OF INSURANCE, DIVISION OF WORKERS' COMPENSATION,
RESPONDENT

═══════════════════════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS

═══════════════════════════════════════════════════════════

**Argued December 6, 2012**

JUSTICE GUZMAN delivered the opinion of the Court, in which JUSTICE JOHNSON, JUSTICE WILLETT, JUSTICE LEHRMANN, JUSTICE BOYD, and JUSTICE DEVINE joined.

JUSTICE GREEN filed a dissenting opinion, in which CHIEF JUSTICE JEFFERSON and JUSTICE HECHT joined.

A fundamental constraint on the courts' role in statutory interpretation is that the Legislature enacts the laws of the state and the courts must find their intent in that language and not elsewhere. Under the guise of agency deference, an agency asks us to judicially engraft into the Texas Workers' Compensation Act a statutory procedure to re-open determinations of eligibility for permanent lifetime income benefits—a procedure the Legislature deliberately removed in 1989. The

Legislature's choice is clear, and it is not our province to override that determination. This is especially true because, as we held in *Texas Mutual Insurance Co. v. Ruttiger*, the Act is a comprehensive statutory scheme, and therefore precludes the application of claims and procedures not contained within the Act.[1] In light of the Act's comprehensive nature, we decline to judicially engraft into it a procedure the Legislature deliberately removed. Accordingly, we affirm the judgment of the court of appeals.

## I. Background

In 1991, Ricky Adcock suffered a compensable injury to his right ankle. Though he underwent reconstructive surgery, he developed reflex sympathetic dystrophy in the injured ankle. In 1997, the appeals panel determined that Adcock was entitled to Lifetime Income Benefits (LIBs) because "the great weight and preponderance of the evidence is that the claimant has the total and permanent loss of use of his right hand <u>at</u> his wrist" in addition to the stipulated loss of use of Adcock's right foot. Liberty Mutual Insurance Company (Liberty), the workers' compensation carrier for Adcock's employer, did not seek judicial review of that decision.

Over a decade later, Liberty sought a new contested case hearing on Adcock's continuing eligibility for LIBs based on Liberty's belief that Adcock may have regained the use of his extremities. The hearing officer determined that Liberty could re-open the previous LIB determination but ultimately concluded Adcock remained entitled to LIBs based on his loss of use of his right hand and both feet. The appeals panel affirmed.

---

[1] 381 S.W.3d 430, 451 (Tex. 2012).

Both parties sought judicial review. Adcock moved for summary judgment, contending the hearing officer lacked jurisdiction to re-open the previous LIB determination. The Texas Department of Insurance, Division of Workers' Compensation (the Division) subsequently intervened, asserting that it has jurisdiction to re-open LIB determinations.[2] The trial court granted Adcock's motion for summary judgment. The court of appeals affirmed, noting the Legislature had specifically removed the procedure to re-open LIB determinations in 1989 and the current Act only provides for ongoing review of temporary income benefits. 353 S.W.3d 246, 249–52.

## II. Discussion

"Enforcing the law as written is a court's safest refuge in matters of statutory construction, and we should always refrain from rewriting text that lawmakers chose . . . ." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 443 (Tex. 2009). We review issues of statutory construction *de novo*, and our primary objective in construing a statute is to ascertain and give effect to the Legislature's intent. *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). The plain meaning of the text, given the context of the statute as a whole, provides the best expression of legislative intent. *Id.*; *Ruttiger*, 381 S.W.3d at 454.

Although we have held that "when the Legislature expressly confers a power on an agency, it also impliedly intends that the agency have whatever powers are reasonably necessary to fulfill its express functions or duties," an agency has no authority to "exercise what is effectively a new power,

---

[2] In 2005, the Legislature abolished the Texas Workers' Compensation Commission and transferred its functions to the Texas Department of Insurance, Workers' Compensation Division. *See* Act of May 29, 2005, 70th Leg., R.S., ch. 265, § 8.001, 2005 Tex. Gen. Laws 469, 607–08.

3

or a power contradictory to the statute, on the theory such a the power is expedient for administrative purposes." *Pub. Util. Comm'n of Tex. v. City Pub. Serv. Bd. of San Antonio*, 53 S.W.3d 310, 316 (Tex. 2001).

The narrow question before us is whether the current version of the Act contains a procedure to re-open LIB determinations. Liberty and the Division assert that if an employee medically improves and no longer meets the statutory requirements for eligibility for LIBs, the Division has "necessarily implicit" authority to re-open the LIB determination. Adcock counters that the plain language of the statute indicates the LIB determination is permanent and offers no procedure to re-open it. We agree with Adcock.

### A. Plain Language

Section 408.161(a) of the Texas Workers' Compensation Act (Act) states that "[l]ifetime income benefits are paid until the death of the employee for" loss of one foot at or above the ankle and one hand at or above the wrist. TEX. LAB. CODE § 408.161(a)(4). Moreover, "the total and permanent loss of use of a body part is the loss of that body part." *Id.* § 408.161(b). And importantly, the Act does not provide any procedure to re-open the LIB determination. *Id.* § 408.161. On the contrary, the Legislature's express mandate that LIBs "are paid until the death of the employee" manifests its intent to make LIB determinations permanent.[3] *Id.* § 408.161(a).

---

[3] The dissent concedes the statute no longer contains a procedure to re-open the LIB determination, indicating that "the Legislature cannot and need not envision every circumstance that may arise in the workers' compensation context" and that it "happened to leave a particular circumstance unaddressed." __ S.W.3d __, __ (Green, J., dissenting).

4

Liberty argues that the term "lifetime" in LIBs "pertains to the duration of a worker's eligibility for benefits; it does not determine entitlement." But the statute does not state that LIBs "may be paid" until the employee's death; rather, it mandates LIBs "are paid" until the employee's death. *Id.* Thus, when, as here, the Division has determined that an employee is eligible for LIBs, the plain language of the statute mandates that such benefits continue until the employee's death.

### B. The Legislature's Comprehensive Benefits Scheme

We recently determined that "[t]he Act effectively eliminates the need for a judicially imposed cause of action outside the administrative processes and other remedies in the Act." *Ruttiger*, 381 S.W.3d at 451. "It is apparent that the Act prescribes detailed, [Division]-supervised, time-compressed processes for carriers to handle claims and for dispute resolution." *Id.* at 443. We observed: "[k]ey parts of the [workers' compensation] system are the amount and types of benefits, the delivery system for benefits, *the dispute resolution processes for inevitable disputes that arise among participants*, the penalties imposed for failing to comply with legislatively mandated rules, and the procedures for imposing such penalties." *Id.* at 450 (emphasis added). Further, we questioned "to what extent the judiciary will respect the Legislature's function of addressing the concerns and adjusting the rights of the parties in the workers' compensation system as part of its policy-making function." *Id.* In answering that question, we ultimately held that "[t]he Act effectively eliminates the need for a judicially imposed cause of action outside the administrative processes and other remedies in the Act." *Id.* at 451. In sum, the Legislature devised a comprehensive workers' compensation system, with specific benefits and procedures based on the

5

public policy of the State of Texas. We concluded in *Ruttiger* that the Court should not alter the Act's comprehensive scheme, and we reaffirm that principle today.

The Act's comprehensive framework requires that we respect the Legislature's choice to not include a procedure to re-open the LIB determination. Before its comprehensive reform of the workers' compensation system in 1989, the Legislature specifically incorporated such a procedure, providing that:

> [u]pon its own motion or upon the application of any person interested showing a change of condition, mistake, or fraud, *the Board at any time within the compensation period, may review any award or order, ending, diminishing or increasing compensation previously awarded*, within the maximum and minimum provided in this Law, or change or revoke its previous order denying compensation, sending immediately to the parties a copy of its subsequent order or award.

Act of May 20, 1931, 42d Leg., R.S., ch. 155, § 1, 1931 Tex. Gen. Laws 260. But the Legislature repealed this provision as part of its reform of the workers' compensation system in 1989. *See* Act effective Jan. 1, 1991, 71st Leg., 2d C.S., ch. 1, § 16.01(7), 1989 Tex. Gen. Laws 114; *see also Ruttiger*, 381 S.W.3d at 439 ("The key, and most controversial, reforms were in the areas of employee benefits and dispute resolution."). Because the Legislature specifically chose to remove the authority to re-open the permanent LIB determination as part of its reforms, we must credit that choice. *See Entergy*, 282 S.W.3d at 443 ("It is, of course, axiomatic that the deletion of language better indicates the Legislature's intent to remove its effect, rather than to preserve it.").

As part of its revised comprehensive scheme of the workers' compensation system, the Legislature established a dichotomy containing two distinct classes of income benefits: temporary benefits and permanent benefits. Temporary benefits are only paid as long as certain conditions

6

(*e.g.*, medical conditions) continue to exist, whereas permanent benefits continue until the occurrence of a statutory, terminating event (*e.g.*, death).

With respect to temporary benefits, the Act lays out specific procedures to re-open benefits determinations. For example, supplemental income benefits (SIBs), a form of temporary benefits, are based upon an employee's demonstration of an active effort to obtain employment. TEX. LAB. CODE § 408.1415(a). The Act expressly allows carriers to "request a benefit review conference to contest an employee's entitlement to supplemental income benefits or the amount of supplemental income benefits." *Id.* § 408.147(a). The Act also specifies the procedures for evaluating whether SIBs should end, allowing a medical evaluation once every twelve months, *id.* § 408.149(a), and permitting the Division to designate a doctor for a medical evaluation to determine if the employee's condition has sufficiently improved to allow him to return to work, *id.* § 408.151(b).

Similarly, temporary income benefits (TIBs)—another form of temporary benefits—are contingent on the employee's recovery. "An employee is entitled to temporary income benefits if the employee has a disability and has not attained maximum medical improvement." *Id.* § 408.101. "'Disability' means the inability because of a compensable injury to obtain and retain employment at wages equivalent to the preinjury wage." *Id.* § 401.011(16). "If the report of a designated doctor indicates that an employee has reached maximum medical improvement or is otherwise able to return to work immediately, the insurance carrier may suspend or reduce the payment of temporary income benefits immediately." *Id.* § 408.0041(k). Because TIBs and SIBs are paid until the employee reaches statutorily sufficient medical improvement, eligibility determinations require periodic evaluation.

While temporary benefits require continuous monitoring to determine whether the employee has achieved the statutory level of improvement, permanent benefits require no such monitoring. This is because such benefits are permanent determinations, only terminating on the occurrence of a specific statutorily mandated life event. For example, death income benefits (DIBs) are paid to eligible beneficiaries when an injury to an employee results in death. *Id.* § 408.181(a). The statute sets out eligibility requirements for children, spouses, and parents. *Id.* § 408.182. Once eligible, benefits continue until the occurrence of some specific event, whether it be death, remarriage, or attaining a certain age. *Id.* § 408.183. There is no provision that allows a carrier to reassess DIBs after eligibility is established. Further, a carrier is permitted to pay DIBs through an annuity, thus removing the act of paying the benefits from the carrier's purview. *Id.* § 408.181(d). According to Division rules, such an annuity is not assignable by the beneficiary. 28 TEX. ADMIN. CODE § 132.16(d)(6). By authorizing use of a method providing a non-assignable right to payment, the Legislature indicated that the right to DIBs exists until the statutory contingency is met—with no procedure for further review.

Similarly, LIBs—like DIBs—are permanent income benefits. LIBs are paid upon the establishment of eligibility—here by the loss of use of two limbs—until the occurrence of a particular event: the death of the employee. TEX. LAB. CODE §§ 408.161(a)(4), (b). Unlike temporary benefits, the statute provides no express statutory procedure to re-open an eligibility determination for LIBs or to assess the medical improvement of the employee. In addition, LIBs, like DIBs may be paid through an annuity. *Id.* § 408.161(d). Such an annuity is likewise not assignable by the beneficiary. 28 TEX. ADMIN. CODE § 131.4(d)(5). As with DIBs, the Legislature

8

has authorized the use of a payment method that provides a non-assignable right to payment for the life of the obligation. Construing the Act in accordance with this dichotomy, the Legislature has established LIBs as a permanent right to benefits with no procedure to re-open that determination.

When the Legislature expresses its intent regarding a subject in one setting, but, as here, remains silent on that subject in another, we generally abide by the rule that such silence is intentional.[4] Thus, the Legislature's express provision of procedures for re-evaluating temporary benefit eligibility and the absence of such a procedure for permanent benefits indicates a deliberate choice, and we must respect the Legislature's prerogative to establish the rights and procedures in the workers' compensation system. Therefore, we decline Liberty's invitation to judicially engraft a procedure inconsistent with the dichotomy the Legislature constructed. *Ruttiger*, 381 S.W.3d at 450; *Entergy*, 282 S.W.3d at 443.[5]

---

[4] *See In re Nalle Plastics Family Ltd. P'ship*, __ S.W.3d __, __, 2013 WL 2150717, at *7 (Tex. May 17, 2013) (holding that the Legislature's use of the word "costs" did not include attorney's fees as the definition of "litigation costs" elsewhere included both costs and attorney's fees); *Tex. Natural Res. Conservation Comm'n v. IT-DAVY*, 74 S.W.3d 849, 859 (Tex. 2002) ("[T]he Legislature knows how to clearly and unambiguously waive sovereign immunity from suit. . . . Here, neither section 5.351 nor 5.352 clearly and unambiguously waives the [Texas Natural Resource Conservation Commission]'s sovereign immunity from suit for breach-of-contract claims."); *Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 358 (Tex. 2001) ("The Legislature could have added similar language to Section 51.014(a)(3) and permitted appeals from orders refusing to decertify a class, but did not."); *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 885 (Tex. 2000) ("Section 26.177(d) shows the Legislature knows how to provide a right of appeal to persons affected by a water quality plan or government action relating to a plan. Yet, the Legislature chose not to provide such a right to persons affected by section 26.179 plans or [Texas Natural Resource Conservation Commission] approval of plans.").

[5] Adcock also asserts that the doctrines of *res judicata* and collateral estoppel act to bar Liberty from re-litigating a previously determined issue. But because the statute grants no authority to re-open LIB determinations, these doctrines do not affect our analysis.

Liberty responds that if—as we hold today—the LIB determination is permanent, this will harm injured employees because they will not be able to obtain LIBs if their initial request is denied but their medical condition subsequently deteriorates. But the Legislature's scheme for payment of LIBs belies this argument. Specifically, section 408.081 states that "[a]n employee is entitled to timely and accurate income benefits as provided by this chapter," and further requires that income benefits be paid weekly without action by the commissioner. TEX. LAB. CODE §§ 408.081(a), (b). Section 408.161 indicates that LIBs are to be paid when the permanent loss of use of certain body parts occurs. *Id.* § 408.161. Thus, when viewed in context, the statute requires that carriers begin paying benefits to employees once eligibility is established. *See Ruttiger*, 381 S.W.3d at 454 ("legislative intent emanates from the Act as a whole"). There is no restriction on *when* such eligibility may be established. Rather, the statute contemplates that whenever a compensable injury leads to a qualifying permanent loss of use, eligibility occurs and the employee becomes entitled to permanent LIBs. This is in direct contrast to the termination of LIBs, which specifically occurs at the employee's death. TEX. LAB. CODE § 408.161(a).

### C. Response to the Dissent

The dissent argues that: (1) despite the statute's failure to include a procedure to re-open the LIB determination, the Act's general definition of "impairment" implies such a procedure; (2) the Act also necessarily implies the authority of the Division to re-open the LIB determination; (3) our remand in *American Zurich Insurance Co. v. Samudio*, 370 S.W.3d 363 (Tex. 2012), requires us to allow the Division to re-open LIB determinations; and (4) the Legislature's framework credits the

Division as "being able to predict the future and knowing absolutely which claimants will always be entitled to" LIBs. These assertions, however, are unavailing.

To support its first argument, the dissent relies on the Act's general definition of "impairment" as "reasonably presumed to be permanent" to conclude that the finding of permanency is merely a prediction. TEX. LAB. CODE § 401.011(23). The dissent searches for support in our observation in *Insurance Co. of State of Pennsylvania v. Muro* that all injuries under section 408.161 result in impairments. 347 S.W.3d 268, 275 (Tex. 2011). But the dissent fails to consider that in *Muro*, we heavily relied on the fact that the Legislature's deletion of certain language in the Act indicated its intent to change the former law. *Id.* ("Because the Legislature chose both to retain the enumerated injuries and to repeal the 'other loss' clause, it clearly did not intend to continue the broader application of lifetime income benefits formerly recognized by some courts of appeals under the old-law's 'other loss' clause."). This generic definition of impairment does not re-inject into the Act an entire procedure for re-opening LIB determinations that the Legislature previously removed.

Additionally, the dissent contends that principles of agency deference necessarily imply the authority for the Division to re-open the LIB determination. *See R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011) ("We have long held that an agency's interpretation of a statute it is charged with enforcing is entitled to 'serious consideration,' so long as the construction is reasonable and does not conflict with the statute's language."). But such deference is in direct conflict with the "well-established principle that" administrative agencies "may exercise only those powers that the Legislature confers upon [them] in *clear and express language*, and cannot erect and exercise what really amounts to a new or additional power for the purpose of administrative expediency." *See Tex. Natural Res. Conservation*

11

*Comm'n v. Lakeshore Util. Co.*, 164 S.W.3d 368, 377 (Tex. 2005) (emphasis added). Here, the Legislature deliberately removed the procedure for re-opening the LIB determination, and that deliberate silence neither creates ambiguity nor confers authority to an agency. *See id.*; *Entergy*, 282 S.W.3d at 443.

Further, the dissent's reliance on *Samudio* is misplaced. *Samudio* involved workers' compensation impairment income benefits. 370 S.W.3d at 365. The Act mandates that the Division assign an impairment rating determined in accordance with certain criteria. *Id*. at 368. In *Samudio*, although the carrier and employee agreed the employee was impaired, they disagreed on the extent of the impairment. *Id*. at 366. Because the Act mandated the Division assign a valid impairment rating but no valid impairment rating was before the Division, we remanded the claim to the Division to consider a valid impairment rating. *Id*. at 368. Thus, *Samudio* stands for the proposition that the Division must comply with the Act's mandates (which was to assign a valid impairment rating). In this case, the Act mandates that the carrier make payments until the employee's death because the Division determined Adcock is eligible for permanent LIBs. *See* TEX. LAB. CODE § 408.161. Re-opening that determination would not enforce the mandate—it would violate it. If the Legislature determines that the employers and employees of Texas are best served by allowing for re-opening LIB determinations, it may craft a review procedure in the statute—as it has done with temporary benefits and previously did with LIBs. This Court, however, must avoid such policy determinations.

Lastly, the dissent asserts that our construction of the comprehensive scheme requires the Division to predict with certainty which claimants will always be entitled to LIBs, a requirement that is unworkable because the future is unknowable. Yet common law and statutory claims, and their

12

procedures for recovering future damages, have long been a cornerstone of our court system. The question is not whether future damages are absolutely knowable but whether the plaintiff proved such damages within a reasonable degree of certainty. *See Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 247 (Tex. 2008). It is not grounds to re-open a judgment simply because a plaintiff incurred fewer future medical expenses than the judgment awarded. Here, the question is whether the Division could determine that an employee lost the use of two limbs. TEX. LAB. CODE §§ 408.161(a)(4), (b). The Division made that determination over a decade ago, and the record indicates no difficulty in doing so. The requirement that an injury be permanent is a familiar concept to the courts and the Legislature and does not yield absurd results.

### III. Conclusion

We defer to the Legislature to craft statutes and we interpret them as written. The Legislature previously included a procedure to re-open LIB determinations—which it removed in 1989. Currently, the Legislature only allows temporary benefit determinations (not permanent benefit determinations like LIBs) to be re-opened. We will not judicially engraft into this comprehensive statute a procedure the Legislature deliberately removed. Accordingly, the Division had no jurisdiction to re-open Adcock's LIB determination, and we therefore affirm the judgment of the court of appeals.

_____
Eva M. Guzman
Justice

OPINION DELIVERED: August 30, 2013

13