

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-13-00419-CV

**TEXAS DEPARTMENT OF INSURANCE**, Workers' Compensation Division,
Appellant

v.

Roel **DE LOS SANTOS**,
Appellee

From the 229th Judicial District Court, Duval County, Texas
Trial Court No. DC-11-147
Honorable Ana Lisa Garza, Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice
Concurring Opinion by:  Patricia O. Alvarez, Justice

Sitting:       Marialyn Barnard, Justice
               Rebeca C. Martinez, Justice
               Patricia O. Alvarez, Justice

Delivered and Filed:  August 27, 2014

AFFIRMED AS MODIFIED

        The Texas Department of Insurance, Division of Workers' Compensation ("the Division")

appeals from a trial court judgment awarding Roel De Los Santos lifetime income benefits.  The

Division argues that the evidence is insufficient to support the award of lifetime income benefits

and that the trial court lacked jurisdiction to order the Subsequent Injury Fund to pay lifetime

income benefits.  We modify the judgment to delete the language ordering the Subsequent Injury

Fund to pay the lifetime income benefits.  As modified, we affirm the judgment of the trial court.

**BACKGROUND**

On June 17, 1987, De Los Santos, a heavy equipment operator, sustained a work-related injury to his left wrist. De Los Santos underwent five surgeries on his left hand, which was completely fused twice. He returned to work with the same employer approximately two and a half years later. Although pain prevented him from gripping the knob of the equipment he operated, he was able to use his left palm, and primarily operated equipment using his right dominant hand.

On July 25, 1994, De Los Santos was injured in a work-related motor vehicle accident that fractured his right radius bone and trapezoid wrist bone. After seeing two different physicians, De Los Santos was referred to his original surgeon, Dr. David Parker, who performed a limited right wrist fusion on August 26, 1994 and also removed his right pisiform (a small wrist bone) on January 13, 1995.

De Los Santos continued to complain of pain over the next two years, and on June 16, 1997, Dr. Parker performed a right-side carpal tunnel release. On July 6, 1998, Dr. Edwin Melendez performed an ulnar nerve transposition on De Los Santos, repositioning his ulnar nerve under the muscles at the elbow. Following this surgery, De Los Santos developed a number of complications. Dr. Melendez suspected that De Los Santos was suffering from Reflex Sympathetic Dystrophy, also known as Complex Regional Pain Syndrome ("CRPS I"). Another physician, Dr. Dennis Lee, performed a bone scan on November 10, 1998 and ruled out CRPS I. Dr. Melendez subsequently referred De Los Santos to a pain management clinic, where he was treated from 1999-2009.

Thereafter, De Los Santos and/or his medical records were evaluated by four different physicians, whose opinions differed regarding whether De Los Santos suffered from CRPS I and as to the severity of his impairment, if any. Dr. Barton Huddleston did not treat De Los Santos,

but conducted a peer review for Texas Mutual Insurance Company of De Los Santos's medical records and found that the medical records lacked critical findings needed to support a diagnosis of CRPS I. He noted that the records reflected considerable pre-existing conditions in both wrists and that De Los Santos did not have a complete loss of use of hands at or above the wrist. In June 2001, Dr. Charles Kennedy evaluated De Los Santos and found CRPS I in De Los Santos's right "upper limb." In 2003, Dr. Ahmad Khalifa conducted a peer review for Texas Mutual Insurance Company. Dr. Khalifa found that a diagnosis of CRPS I was not supported, and had previously been ruled out. He diagnosed De Los Santos with "postoperative right ulnar neuropathy." In his opinion, De Los Santos's complaints of pain were not related to the compensable injury, which had completely healed. In 2010, Dr. Daniel Boudreau, the designated doctor, examined De Los Santos. He reported, "[e]xtent of injury is right wrist injury and Reflex Sympathetic Dystrophy Severe both hands and arms." Dr. Kennedy evaluated De Los Santos again in 2012. In his report, Dr. Kennedy opined that De Los Santos has "minimal use of his hands, which do not allow for any type of meaningful employment."

After exhausting his Workers' Compensation temporary benefits, De Los Santos sought lifetime income benefits ("LIBs") from Texas Mutual Insurance Company in a contested case hearing pursuant to section 410.026 of the Texas Labor Code. The issues before the Division were: (1) whether De Los Santos was entitled to LIBs based on the total and permanent loss of use of both his hands; and (2) whether the compensable injury extended to include CRPS I to both hands, arms, right shoulder, anxiety, insomnia, and sexual dysfunction. The Division found: (1) De Los Santos was not entitled to collect LIBs from Texas Mutual Insurance Company because he had not established a total and permanent loss of use of both hands; and (2) his 1994 compensable injury did not extend to include the subsequent conditions he alleged in seeking LIBs.

After the Division's Appeals Panel upheld the Hearing Officer's denial of LIBs, De Los Santos filed suit against Texas Mutual Insurance Company for judicial review. The Division exercised its statutory right to intervene in the suit to defend its decision. A bench trial was conducted at which De Los Santos testified, and the trial court reviewed his medical records and the deposition testimony of Dr. Kennedy. The trial court reversed the decision of the Appeals Panel and entered judgment in favor of De Los Santos. The trial court found that the 1994 compensable injury extends to include CRPS I to both the right hand, upper arm extremity, and right shoulder, and insomnia due to pain.[1] The trial court further found that De Los Santos had permanently lost the use of both hands such that he was prevented from procuring and retaining employment requiring their use. The trial court issued a final judgment and order finding that De Los Santos is entitled to LIBs and ordering the Division's Subsequent Injury Fund to pay them to him from August 26, 1994 through the present and continuing into the future in accordance with Texas law. Attorney's fees were also awarded. The Division timely appealed.

## STANDING

Before addressing the Division's complaints on appeal, we must first resolve De Los Santos's contention that the Division lacks standing to challenge the trial court's judgment awarding LIBs. De Los Santos asserts that there is no procedure by which the Division may independently challenge the determination of his entitlement to LIBs, and therefore this appeal should be dismissed for lack of subject matter jurisdiction. In support, De Los Santos relies on *Liberty Mut. Ins. Co. v. Adcock*, 412 S.W.3d 492 (Tex. 2013). The Division contends that *Adcock* is distinguishable. We agree.

---

[1] The trial court found that the compensable injury does not extend to include anxiety or sexual dysfunction.

The narrow issue presented in *Adcock* was whether the Workers' Compensation Act permits the "reopening" or periodic revisiting of a claimant's continuing eligibility for LIBs. *Id*. at 494. In that case, the insurance carrier sought a new contested case hearing on the claimant's continuing eligibility for LIBs based on the carrier's belief that the claimant may have regained the use of his extremities. *Id*. at 493-94. The proceeding was brought over ten years after the LIB determination even though the carrier had never sought judicial review of the LIB award. *Id*. The court held that the claimant's LIB determination could not be reopened and withdrawn based on changed circumstances. *Id*. at 497. The court did *not* hold, as De Los Santos claims it did, that the Division is prohibited from seeking judicial review of a LIB determination under Section 410.301. *See* TEX. LAB. CODE ANN. § 410.301 (West 2006) (permitting judicial review of issues regarding income benefits). In fact, the issue of appellate review was not even before the court in *Adcock*.

Here, the Division was an intervenor in the underlying proceeding and is therefore a proper party. *See id*. § 410.254 (West 2006); *Tex. Workers' Comp. Comm'n v. Hartford Acc. & Indem. Co*., 952 S.W.2d 949, 953 (Tex. App.—Corpus Christi 1997, pet. denied). As such, the Division has standing to challenge the trial court's final judgment ordering that De Los Santos is entitled to LIBs. *See* TEX. LAB. CODE ANN. § 410.301. We therefore reject De Los Santos's complaint, and hold that the Division has standing to challenge the trial court's judgment.

## SUBSEQUENT INJURY FUND

In its first issue, the Division argues that the trial court lacked jurisdiction to order the Subsequent Injury Fund ("the Fund") to pay De Los Santos LIBs before he presented his LIB request to the Fund and pursued any disagreement with the determination of his LIB payments through a separate proceeding, as required by Chapter 410 of the Labor Code. Specifically, the Division argues that although the trial court had the authority to determine whether De Los Santos

was *entitled* to LIBs following the Division's final administrative disposition of his claim against Texas Mutual Insurance Company, it lacked jurisdiction to *order* the Fund to *pay* LIBs to De Los Santos. *See*, *e.g.*, TEX. LAB. CODE ANN. § 410.257(d), (f) (West 2006) (judgment entered by a court on judicial review of the appeals panel decision may not order reimbursement from the subsequent injury fund; noncomplying order is void). The Division contends that the proper procedure would have been for De Los Santos to present the trial court's final judgment to the Fund for payment. *See, e.g., Lumbermens Mut. Cas. Co. v. Portillo*, No. 13-10-00470-CV, 2011 WL 2976869, at *2 (Tex. App.—Corpus Christi July 21, 2011, no pet.) (mem. op.) (once the trial court renders judgment regarding impairment rating, "[i]t is then incumbent upon [the insurance carrier] to present that judgment to the [Fund]" for reimbursement); 28 TEX. ADMIN. CODE § 116.11 (2014) (Tex. Dep't of Ins., Div. of Workers' Comp.) (request for reimbursement from the Subsequent Injury Fund).

The issue before us appears to be one of first impression. In determining whether the trial court was authorized to order the Fund to pay LIBs directly to De Los Santos, we acknowledge that the Workers' Compensation Commission and the Fund are creatures of statute. *See Second Injury Fund v. Keaton*, 345 S.W.2d 711, 713 (Tex. 1961). As such, we must be "mindful of the principle that, when the Legislature has enacted a comprehensive statutory scheme, we will refrain from imposing additional claims or procedures that may upset the Legislature's careful balance of policies and interests." *Ritchie v. Rupe*, No. 11-0447, ---S.W.3d---, 2014 WL 2788335, at *14 (Tex. 2014) (citing *Adcock*, 412 S.W.3d at 493 (noting that the Texas Workers' Compensation Act "is a comprehensive statutory scheme, and therefore precludes the application of claims and procedures not contained within the Act.")). Under Labor Code section 402.061, which authorizes the Workers' Compensation Commission to adopt regulations to enforce the Texas Workers' Compensation Act, the Workers' Compensation Commission has adopted regulations to

implement the Fund.  *See* TEX. LAB. CODE ANN. § 402.061 (West 2006); 28 TEX. ADMIN. CODE §§ 131.2-131.4 (2014).

The Fund is a dedicated account in the general revenue fund used only for purposes specified by statute.  *See* TEX. LAB. CODE ANN. § 403.006 (West Supp. 2014); *Vista Med. Ctr. Hosp. v. Tex. Mut. Ins. Co.* 416 S.W.3d 11, 22 n.17 (Tex. App.—Austin 2013, no pet.).  Section 403.006 provides that the Fund is liable for reimbursement of insurance carriers for overpayment of benefits as well as the payment of compensation as provided by Section 408.162.  TEX. LAB. CODE ANN. § 403.006(b)(1)-(4) (West Supp. 2014).  Section 408.162 provides that:

> (a) If a subsequent compensable injury, with the effects of a previous injury, results in a condition for which the injured employee is entitled to lifetime income benefits, the insurance carrier is liable for the payment of benefits for the subsequent injury only to the extent that the subsequent injury would have entitled the employee to benefits had the previous injury not existed.
>
> (b) The subsequent injury fund shall compensate the employee for the remainder of the lifetime income benefits to which the employee is entitled.

*Id.* § 408.162(a), (b) (West 2006).

Although Section 408.162(b) provides that the Fund is responsible for compensating the employee for the remainder of LIBs not owed by the insurance carrier, the statute does not specify the manner in which such payment is to be made.  The Administrative Code, however, is more illustrative.  Section 131.3 provides that when an insurance carrier reasonably believes that an injured employee may be eligible for LIBs from the Fund, the insurance carrier shall petition the commission for payment of LIBs from the Fund.  28 TEX. ADMIN. CODE § 131.3(a) (2014) (Tex. Dep't of Ins., Div. of Workers' Comp.) (Lifetime Income Benefits).  No other rules in the Administrative Code speak to payment of LIBs.  De Los Santos does not provide any authority indicating that the trial court has the authority to order the Fund to pay LIBs.  Thus, it appears that payment of LIBs will not be made by the Fund absent a proper request.  We therefore agree with

the Division that the trial court cannot order the Fund to pay LIBs directly to De Los Santos absent proper presentment. *See Adcock*, 412 S.W.3d at 493 (court is precluded from applying claims and procedures not contained within the Workers' Compensation Act). Accordingly, we hold that the trial court erred in ordering the Fund to pay LIBs. The Division's first issue is sustained.

SUFFICIENCY OF THE EVIDENCE

The Division next argues that the evidence is legally and factually insufficient to support the trial court's determination that De Los Santos is entitled to LIBs because the medical testimony was conclusory and failed to establish that De Los Santos's compensable injuries caused him to lose the use of both of his hands.

*Standard of Review*

When the trial court is the trier of fact, a legal sufficiency challenge to the trial court's findings of fact is reviewed under the same standard that is applied in reviewing evidence supporting a jury's answer. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). A legal sufficiency challenge may only be sustained when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or rules of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998). We review the evidence in the light most favorable to the verdict, crediting favorable evidence if a reasonable fact-finder could, and disregarding contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

In reviewing a factual sufficiency challenge, we examine all the evidence to determine if the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the judgment should be set aside and a new trial ordered. *Cain v. Bain*, 709 S.W.2d 175, 176

(Tex. 1986). We will reverse only if the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Id.* at 176.

The Division's decision on issues involving compensability of the injury and eligibility for and the amount of income and death benefits is reviewed by the district court under a modified *de novo* review. *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 515 (Tex. 1995). Under the "modified *de novo*" standard, the parties try, before the trial court, only those issues finally decided by the Division's Appeals Panel. TEX. LAB. CODE ANN. § 410.304(b) (West 2006); *Tex. Prop. & Cas. Guar. Ass'n v. Nat'l Am. Ins. Co.*, 208 S.W.3d 523, 530 (Tex. App.—Austin 2006, pet. denied). The appealing party bears the burden of proof by a preponderance of the evidence. TEX. LAB. CODE ANN. § 410.303 (West 2006). When a court is the trier of fact, it is to consider the decision of the Division's Appeals Panel. *Id.* § 410.304(b) (West 2006). However, the court is not required to accord the Division's decision any particular weight. *Id.* § 410.304(b) (West 2006). In addition, the opinion of the designated doctor regarding impairment is accorded no special weight. *Garcia*, 893 S.W.2d at 515.

*Lifetime Income Benefits*

"Lifetime income is the greatest income benefit a worker can receive under the Workers' Compensation Act." *Ins. Co. of State of Pennsylvania v. Muro*, 347 S.W.3d 268, 271 (Tex. 2011); TEX. LAB. CODE ANN. § 408.161 (West 2006). As the name implies, these benefits are payable until the injured employee's death. TEX. LAB. CODE ANN. § 408.161(a). Pursuant to Section 408.161 of the Labor Code, a person is eligible for lifetime income benefits if he sustains loss of use of both hands at or above the wrist. TEX. LAB. CODE ANN. § 408.161(a)(3); *Region XIX Serv. Ctr. v. Banda*, 343 S.W.3d 480, 485 (Tex. App.—El Paso 2011, pet. denied). Under the statute, "the total and permanent loss of use of a body part is the loss of that body part." TEX. LAB. CODE ANN. § 408.161(b). "Total loss of use of a member of the body exists whenever by reason of injury

such member no longer possesses any substantial utility as a member of the body or the condition of the injured member is such that the worker cannot get and keep employment requiring the use of such member." *Galindo v. Old Republic Ins. Co.*, 146 S.W.3d 755, 759 (Tex. App.—El Paso 2004, pet. denied); *Navarette v. Temple Indep. Sch. Dist.*, 706 S.W.2d 308, 310 (Tex. 1986). The loss of use must also be permanent for a claimant to qualify for LIBs. *Galindo*, 146 S.W.3d at 759.

*Analysis*

At the bench trial, the trial court considered De Los Santos's medical records as well as the testimony of De Los Santos and Dr. Kennedy. Dr. Kennedy is a board certified orthopedic surgeon who twice examined De Los Santos and reviewed his extensive medical records. Dr. Kennedy testified that the hallmark of CRPS is excessive pain and hypersensitivity. Upon examining De Los Santos, Dr. Kennedy noticed signs of visible pain and observed that De Los Santos has difficulty grasping things because he cannot close his hands all the way down. According to Dr. Kennedy, "there is no question in my mind that [De Los Santos] has CRPS."

Dr. Kennedy stated that he is a proponent of getting people back to work because work is good for them, both psychologically and physically. Dr. Kennedy noted that De Los Santos is a high school graduate who attempted to retrain in accounting after sustaining his injuries, but his hands gave him so much trouble that he had to discontinue writing and data entry and was not able to maintain employment in the field. Although many sufferers of CRPS improve over time, Dr. Kennedy noted that De Los Santos's function level deteriorated significantly from 2001 to 2012. Dr. Kennedy testified that De Los Santos performs minimal activity around his house, including very light house work, such as washing dishes and occasionally emptying the garbage. He has to hire someone to mow the grass. In Dr. Kennedy's opinion, De Los Santos, due to an injury to both hands that happened at different times, totally lost the use of both of his hands, such that he cannot

get and keep employment requiring the use of his hands. Dr. Kennedy verified that De Los Santos cannot even perform light duty sedentary work because of the damage to his hands.

The Division argues that Dr. Kennedy's testimony is (1) conclusory and fails to establish the requisite causation, and (2) cannot support a finding that De Los Santos's hands no longer possess any substantial utility. First, Dr. Kennedy did not, as the Division contends, focus solely on whether De Los Santos could work as a heavy equipment operator or perform manual labor. Rather, Dr. Kennedy acknowledged that De Los Santos retrained in data entry and attempted to work in that field but was unable to do so due to trouble with his hands. In addition, Dr. Kennedy established a causal connection between De Los Santos's initial injuries and his subsequent conditions, i.e., CRPS I. *See City of Laredo v. Garza*, 293 S.W.3d 625, 632 (Tex. App.—San Antonio 2009, no pet.) (expert testimony is required to support a diagnosis of CRPS I). Dr. Kennedy explained that the 1994 compensable injury caused De Los Santos to lose the use of his hands such that he could no longer perform work requiring the use of his hands. Because there was no evidence that De Los Santos suffered from another condition or sustained a subsequent injury that could be attributable to his CRPS, there was no need for Dr. Kennedy to rule out other plausible causes of De Los Santos's CRPS. Thus, the medical testimony presented at trial was sufficient to meet the applicable causation standard. *See Transcontinental Ins. Co. v. Crump*, 330 S.W.3d 211, 227 (Tex. 2011) (compensable injury must be substantial factor in bringing about the subsequent condition in question).

Second, we cannot agree that the fact that De Los Santos is able to perform certain tasks, such as carrying groceries and opening doors, undermines the trial court's finding that De Los Santos's hands lack substantial utility. In *El Paso Ind. Sch. Dist. v. Pabon*, 214 S.W.3d 37, 41-42 (Tex. App.—El Paso 2006, no pet.), evidence was presented that the workers' compensation claimant was able to perform the duties of a paraprofessional position, which required the use of

her hands, including grasping and fine manipulation.[2] Nonetheless, the court of appeals held that such evidence did not necessitate a finding that the claimant's hands had some substantial utility, as would preclude an award of lifetime income benefits for loss of both hands at or above the wrist, because other evidence demonstrated that the claimant could not grasp objects, had constant pain in her hands, and could not perform housework or other ordinary tasks. *Id*. at 42. Likewise, in this case, there was testimony that De Los Santos suffers from CRPS, the hallmark of which is excessive pain and hypersensitivity. He has difficulty grasping things, which precludes him from working in manual labor. In addition, he is unable to perform sedentary work, such as data entry, due to persistent pain in both hands. Accordingly, we conclude that a preponderance of the evidence supports the trial court's finding that De Los Santos's hands lacked substantial utility such that he is unable to procure and retain employment requiring their use. *See Travelers Inc. Co v. Seabolt*, 361 S.W.2d 204, 206 (Tex. 1962) ("Although a member may possess some utility as a part of the body, if its condition be such as to prevent the workman from procuring and retaining employment requiring the use of the injured member, it may be said that a total loss of the use of a member has taken place.").

Based on the evidence presented at trial, considering the evidence and inferences supporting the trial court's finding, and disregarding all evidence and inferences to the contrary, we conclude more than a scintilla of evidence exists to support the trial court's finding that De Los Santos was entitled to LIBs. *See Dallas Nat'l Ins. Co. v. De La Cruz*, 412 S.W.3d 36, 43 (Tex. App.—El Paso 2013, pet. abated). The Division's legal sufficiency challenge is therefore overruled.

---

[2] The claimant did not qualify for the position, however, due to her inability to pass a written test. *Id.* at 41.

Likewise, a review of all of the evidence presented demonstrates that while there are some contradictory statements in the exhibits that support and challenge the extent of De Los Santos's injuries, the verdict is not so against the great weight of the evidence as to be clearly wrong and unjust. Accordingly, the Division's factual sufficiency complaint is overruled.

## CONCLUSION

We modify the trial court's judgment to delete the language ordering the Subsequent Injury Fund to pay LIBs; specifically, paragraphs 12(d) and (e) of the judgment are modified to read as follows:

(d) Roel De Los Santos is entitled to LIBs from August 26, 1994 through the present and continuing into the future in accordance with Texas law;

(e) Roel De Los Santos is entitled to LIBs accrued in the past along with the annual 3% increase pursuant to Texas Labor Code § 408.161(c), offset by any income benefits already paid to Roel De Los Santos by defendant Texas Mutual Insurance Company[.]

As modified, the judgment of the trial court is affirmed.

Rebeca C. Martinez, Justice