**Petition for Writ of Mandamus Denied and Majority and Dissenting Opinions filed August 4, 2025.**



In The

# Fifteenth Court of Appeals

_____

## NO. 15-24-00091-CV
_____

## IN RE OFFICE OF THE ATTORNEY GENERAL OF THE STATE OF TEXAS, Relator

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**139th District Court**
**Hidalgo County, Texas**
**Trial Court Cause No. C-2639-24-C**

## OPINION

The issue in this case is whether the trial court abused its discretion by denying a petition to take a Rule 202 pre-suit deposition to investigate a possible corporate violation of state law. We conclude it did not and therefore deny relief.

## Background

On December 14, 2022, Texas Governor Greg Abbott sent a letter to Texas Attorney General Ken Paxton citing "recent reports that non-governmental organizations (NGOs) may have assisted with illegal border crossings," and calling on him "to initiate an investigation into the role of NGOs in planning and facilitating the illegal transportation of illegal immigrants across our borders." As part of that investigation, on March 25, 2024, the Office of the Attorney General (OAG) served a "Notice of Demand for Sworn Statement" on Catholic Charities of the Rio Grande Valley (Catholic Charities or the corporation), directing it to designate a representative to testify on a series of topics regarding alleged aid for illegal border crossings in violation of Texas law.

Catholic Charities declined to present a representative to testify under oath, but instead provided over 100 pages of documents and a sworn statement from its Executive Director, Sister Norma Pimentel. After the OAG deemed this response insufficient, the parties tried for 10 weeks to reach a compromise without success, after which the OAG filed a Rule 202 petition for a pre-suit deposition on June 5, 2024, in the 139th District Court of Hidalgo County, Texas. *See* Tex. R. Civ. P. 202. The petition claims the deposition was in anticipation of a possible quo warranto suit seeking forfeiture of the corporation's corporate charter for violation of Texas law. After an evidentiary hearing, the trial court denied the petition on July 16, 2024.

The OAG challenged that order by filing this petition for mandamus. The OAG claims the trial court abused its discretion by denying the Rule 202 petition. Specifically, it claims it is entitled to pre-suit depositions as a matter of law due to its statutory visitorial powers, or in the alternative under the standards required by Rule 202. We reject both grounds.

2

**Discussion**

**This Court's Mandamus Jurisdiction**

The original jurisdiction of this Court is "limited to writs arising out of matters over which the court has exclusive intermediate appellate jurisdiction." Tex. Gov't Code § 22.221(c-1). Our "exclusive intermediate appellate jurisdiction," in turn, includes "matters arising out of or related to a civil case . . . brought by or against the state." *Id.* § 22.220(d)(1). The corporation argues that because a Rule 202 order against an anticipated defendant (as here) is "neither final nor appealable," *see In re Jorden*, 249 S.W.3d 416, 419 (Tex. 2008), it cannot fall within our exclusive *appellate* jurisdiction, and thus is not within our writ jurisdiction either.

But as the Supreme Court of Texas recently held, when construed together and in context these two provisions are co-extensive, assigning to this Court "appeals *and* writs within its exclusive intermediate appellate jurisdiction." *Kelley v. Homminga*, 706 S.W.3d 829, 834 (Tex. 2025) (emphasis added). Since the state's petition for a Rule 202 deposition is itself "a civil case . . . brought by the state," our jurisdiction includes both appellate *and* original matters arising out of or related to it. Tex. Gov't Code § 22.220(d)(1); *see Tex. Dep't of Fam. & Protective Servs. v. Grassroots Leadership, Inc.*, -- S.W.3d --, 2025 WL 1642437, at *8 (Tex. May 30, 2025) ("For in a 'case,' the court 'hear[s] the facts,' 'decide[s] the issues of fact made by the pleadings,' 'decide[s] the questions of law involved, and possess[es] the power to enter a judgment on the facts found in accordance with the law as determined by the court.'" (quoting *United Services Life Ins. Co. v. Delaney*, 396 S.W.2d 855, 861 (Tex. 1965)); *see also In re C.R. England, Inc.*, 413 S.W.3d 838, 842 (Tex. App.—Beaumont 2013, orig. proceeding) ("[T]he common legal usage for the word 'case' does not exclude ancillary proceedings"). Accordingly, we deny the corporation's jurisdictional objection.

## Can the OAG demand a corporate deposition as a matter of law?

"Corporations are generally creatures of state law." *Rodriguez v. Fed. Deposit Ins. Corp.*, 589 U.S. 132, 137 (2020). This origin story carried with it a state's common law right to examine corporate conduct, analogous to the right of a charitable trust's founder to examine its conduct. *See Trustees of Darthmouth Coll. v. Woodward*, 17 U.S. 518, 674 (Story, J., concurring) ("This visitatorial power is, therefore, an hereditament founded in property, and valuable, in intendment of law; and stands upon the maxim, that he who gives his property, has a right to regulate in the future."). The Texas Constitution delegates this "visitorial" right to examine corporate entities to the Attorney General:

> The Attorney General . . . shall especially *inquire* into the charter rights of all private corporations, and from time to time, in the name of the State, *take such action in the courts* as may be proper and necessary to prevent any private corporation from exercising any power . . . not authorized by law.

Tex. Const. art. IV, § 22 (emphasis added).

And since 1907 the Legislature has codified the Attorney General's visitorial authority by statute, with the current version at Section 12.153 of the Texas Business Organizations Code:

> The [A]ttorney [G]eneral may investigate the organization, conduct, and management of a filing entity or foreign filing entity and determine if the entity has been or is engaged in acts or conduct in violation of: (1) its governing documents; or (2) any law of this state.

The OAG claims it "is *always* entitled to take a pre-suit deposition of a corporate entity," because its constitutional and statutory power to "inquire into" and "investigate" corporate conduct "*necessarily* includes the authority to take pre-suit depositions." But as the OAG conceded, "there is no published Texas case law on this authority," and for several reasons we decline to be the first.

4

First, the visitorial statutes say nothing about depositions or sworn testimony. *See* Tex. Bus. Orgs. Code §§ 12.151–.156. Several state laws expressly authorize the Attorney General to obtain pre-suit sworn testimony, *see e.g.*, Tex. Bus. & Com. Code § 17.60 (authorizing Attorney General's consumer protection division to "examine under oath" any person it has reason to believe has engaged in deceptive trade practices); *id*. § 15.10(b) (authorizing Attorney General to require any person with information relevant to a civil antitrust investigation "to give oral testimony"); Tex. Civ. Prac. & Rem. Code § 140A.052(3) (same regarding person with information relevant to civil racketeering investigation), but the visitorial statutes do not. They authorize the Attorney General to examine corporate records simply upon "written request" without a court order, *see* Tex. Bus. Orgs. Code § 12.152, but do not do the same for oral testimony. *See id.* § 12.153. The constitutional provision for the Attorney General to take such action "*in the courts as may be proper* and necessary" also implies that to go further than that, the OAG needs further judicial or legislative authority. Tex. Const. art. IV, § 22 (emphasis added).

Second, the Legislature could not have contemplated authorizing modern discovery-style depositions when the visitorial statutes were enacted, because they did not yet exist. The first visitorial statute was enacted in 1907, *see* Act of March 15, 1907, 30th Leg., R.S., ch. 21, § 2, 1907 Tex. Gen. Laws 34, 35, but no state law authorized oral depositions until some weeks later, *compare id*. (enacting visitorial statute) *with* Act of April 12, 1907, 30th Leg., R.S., ch. 91 § 2, 1907 Tex. Gen. Laws 186, 187 (enacting deposition statute). Even then, the law contemplated only depositions to perpetuate testimony rather than discovery depositions like OAG seeks here. *See* William V. Dorsaneo III, *The History of Texas Civil Procedure*, 65 Baylor L. Rev. 713, 728–29 (2014) ("By 1907, the oral deposition became a part of Texas practice, but when it did, its scope was confined in the same way as the scope of discovery had been confined for written depositions. . . . Basically, the only

5

type of discovery in Texas practice for 100 years was deposition discovery designed to perpetuate admissible testimony, which was not pretrial discovery in the modern sense at all.").

Catholic Charities also argues that Section 12.153 was never intended to *extend* the Attorney General's authority to more intrusive forms of investigation, but instead to *limit* the purposes for which corporate books could be reviewed:

- § 12.151 authorizes the Attorney General to examine corporate records;

- § 12.152 authorizes examination of records upon written request;

- § 12.153 restricts investigations of corporate conduct to violation of a corporation's own governing documents or state law;

- § 12.154 restricts disclosure of information from corporate records;

- § 12.155 penalizes failure to permit examination of records by revoking an entity's right to do business; and

- § 12.156 penalizes failure to permit any of the above as a misdemeanor.

The OAG responds that all these statutes cannot be limited to record requests (although that is all they expressly mention) due to the canon against surplusage, *see, e.g., Whole Woman's Health v. Jackson*, 642 S.W.3d 569, 581 (Tex. 2022), since "investigate" in Section 12.153 would then mean nothing new or different. But that assumes there are only two ways to "investigate": examine documents and depose witnesses. Yet the word "investigate" includes *any* systematic inquiry into a matter. *See Investigate*, Black's Law Dictionary 987 (12th ed. 2024) ("To inquire into (a matter) systematically"). Law enforcement agents routinely investigate matters by interviewing witnesses, taking witness statements, conducting surveillance, searching public records or the internet, and so on. The power to "investigate" would clearly include those, while the power to "examine" books and records would not.

Since "investigate" includes more than document review, we cannot assume it necessarily includes sworn depositions without saying so. *San Jacinto River Auth. v. City of Conroe*, 688 S.W.3d 124, 135 (Tex. 2024) (stating courts prefer an "ordinary meaning over an unusual meaning that would avoid surplusage.").

We decline the OAG's invitation to be the first Texas state court to hold that state law grants that department an across-the-board right to demand pre-suit depositions. We turn instead to its alternate claim for a judicial order under Rule 202.

### Did the trial court err in applying Rule 202?

Rule 202 depositions are not meant to be routine. As recognized by the Texas Supreme Court, "[t]here are practical as well as due process problems with demanding discovery from someone before telling them what the issues are." *In re Jorden*, 249 S.W.3d 416, 423 (Tex. 2008). "[I]ntrusion into otherwise private matters authorized by Rule 202 outside a lawsuit is not to be taken lightly," and judges should maintain "active oversight" to ensure the Rule is not misused. *In re Does*, 337 S.W.3d 862, 865 (Tex. 2011). In short, "Rule 202 is not a license for forced interrogations," *In re Wolfe*, 341 S.W.3d 932, 933 (Tex. 2011), even when the one doing the interrogation is the State of Texas.

Consistent with a trial court's "active oversight" of a request to take a pre-suit deposition, the Rule 202 inquiry is evidentiary in nature. It is the petitioner's burden to introduce evidence that the requirements of Rule 202 are met. Tex. R. Civ. P. 202.4(a).[1] Here, the OAG, as petitioner, was required to introduce evidence to

---

[1]Numerous Texas appellate courts have recognized the petitioner has the burden to introduce evidence to support a Rule 202 petition. *See In re Josefsberg*, No. 01-22-00604-CV, 2022 WL 17981852, at *3 (Tex. App.—Houston [1st Dist.] Dec. 29, 2022, orig. proceeding); *DeAngelis v. Protective Parents Coal.*, 556 S.W.3d 836, 854 (Tex. App.—Fort Worth 2018, no pet.); *In re Legate*, No. 04-10-00874-CV, 2011 WL 4828192, at *2 (Tex. App.—San Antonio Oct.

support a finding that "the likely benefit of allowing the petitioner to take the requested deposition to investigate a potential claim outweighs the burden or expense of the procedure." Tex. R. Civ. P. 202.4(a)(2). It did not meet its burden and, as a result, we cannot conclude that the trial court abused its discretion based on the record before it.

The sum total of the admitted evidence at the hearing before the trial court was correspondence between the OAG's attorney and the attorney for Catholic Charities, documents Catholic Charities produced to the OAG, a sworn statement by the head of Catholic Charities in which she provided answers to questions submitted by the OAG, and a letter from Governor Greg Abbott to Attorney General Ken Paxton. Far from painting a picture of an uncooperative or evasive organization, the record before the trial court—which is all we can consider in this original proceeding—demonstrates that Catholic Charities was responsive to the OAG's requests and that it cooperated through its attorney. And, when the OAG indicated that not all of its questions were answered by the documents Catholic Charities produced, Catholic Charities produced more documents and then provided a sworn statement from its Executive Director, Sister Norma Pimentel, answering the OAG's questions under oath.

Although this sworn statement and the documents produced may not have provided all of the information or the narrative responses the OAG seeks at this

---

12, 2011, orig. proceeding); *In re Global Experience Specialists*, No. 05-18-01382-CV, 2018 WL 6167838, at *1 (Tex. App.—Dallas Nov. 26, 2018, orig. proceeding); *In re Hunt*, No. 06-24-00070-CV, 2024 WL 5132167, at *4 (Tex. App.—Texarkana Dec. 17, 2024, orig. proceeding); *In re INVISTA S.a.r.l*, No. 09-18-00351-CV, 2-18 WL 5660157, at *4 (Tex. App.—Beaumont Nov. 1, 2018, orig. proceeding); *In re Pickrell*, No. 10-17-00091-CV, 2017 WL 1452851, at *6 (Tex. App.—Waco Dec. 21, 2018, orig. proceeding); *Gordon Ind. Sch. Dist. v, Hinkson*, 661 S.W.3d 922, 928 (Tex. App.—Eastland 2023, no pet.); *In re Tatum*, 567 S.W.3d 800, 805 (Tex. App.—Tyler 2018, orig. proceeding); *In re East*, 476 S.W.3d 61, 68 (Tex. App.—Corpus Christi–Edinburg 2014, orig. proceeding).

juncture, they addressed the lion's share of the issues on which the OAG sought the Rule 202 deposition. Catholic Charities's documents and answers provided enough information for the OAG to evaluate whether to file suit and a sufficient record on which the trial court had discretion to conclude that the benefit of taking the deposition did not outweigh its burden.

To reach the opposite conclusion, the dissent considers a record the OAG did not make and that the trial court did not consider. The dissenting opinion spends three pages discussing the crisis at the Texas border and the effect of the Governor's declarations of a state of disaster on the border as justification for why the benefit of the Rule 202 deposition outweighs the burden. Dissenting Op. at pp. 3–6. Such concerns are significant, and we do not take them lightly. The problem is the OAG did not introduce any disaster declaration into evidence, nor did it ask the trial court to take judicial notice of it. And evidence in support of Rule 202 findings cannot be implied. *See In re Does*, 337 S.W.3d at 865 ("The rule does not permit the findings to be implied from support in the record.").

Then, the dissent engrafts factors from Rule 194.2 into its Rule 202 analysis even though those factors are nowhere to be found in Rule 202. The dissent reasons that since a deposition under Rule 202 is the same in scope as a deposition after a suit is filed, *see* Tex. R. Civ. P. 202.5, then the factors to be considered for proportionality of any discovery must somehow also apply to whether a deposition is authorized under Rule 202. Dissenting Op. at p. 3. Although the language of the rules is admittedly similar, engrafting additional factors to be considered for whether post-suit discovery is proportional under Rule 192.4 onto the considerations for whether to grant a pre-suit deposition at all under Rule 202 is a logical leap. But it is necessary for the dissent's analysis to take that leap because using the additional factors found in Rule 192.4—such as the importance of the issues at stake in the

litigation and the importance of the discovery in resolving those issues, neither of which is found in the language of Rule 202—allows the dissent to use the Governor's disaster declaration as a countervailing consideration to overcome all others, despite its omission from the record. The dissent uses "the exceptional nature and importance of a dispute" to ask whether it "justifies exceptional discovery" before launching into a discussion of the border crisis, which then justifies its conclusion that the trial court abused its discretion in not ordering the deposition. Dissenting Op. at p. 3.

Had the Texas Supreme Court intended that courts apply the factors in Rule 194.2 in a Rule 202 analysis on whether to *grant* a pre-suit deposition, it would have said so. *Liberty Mut. Ins. Co. v. Adcock*, 412 S.W.3d 492, 493 (Tex. 2013) (noting that courts must find meaning in statute's language and not elsewhere); *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 579 (Tex. 2012) (noting that courts must interpret rules of procedure under same rules as statutes). And presumably there is a reason it did not do so. The Texas Supreme Court has cautioned that authorization of a pre-suit deposition is subject to greater scrutiny than post-suit depositions due to due-process concerns.[2] *In re Jorden*, 249 S.W.3d at 423. Rules relating to a deposition's scope, once authorized, do not change that. In any event, we have no authority to create a new rubric of factors for the trial court to consider when deciding a Rule 202 petition that no Texas court to date has considered.

Even so, whether the OAG should have been granted a deposition under Rule 202 is admittedly a close call even given the sparse record before the trial court and using only the factors set forth in Rule 202. Catholic Charities did not have many

---

[2] It is also notable that even if Rule 192.4's factors could be used to decide whether to grant a pre-suit deposition under Rule 202, those factors also require a party to introduce evidence in their support, *In re USAA*, 623 S.W.3d 782, 792 (Tex. 2021); *In re Google*, 705 S.W.3d 479, 485 (Tex. App.—15th 2025, orig. proceeding), which, again, the State did not adequately do.

corporate records, and the Governor's request that the Attorney General investigate NGOs like Catholic Charities is part of the record. These facts, which are in evidence, support the benefits of allowing the deposition, but they are not conclusive that those benefits outweigh the burden on Catholic Charities.

It was the OAG's burden of proof to demonstrate that the benefits of forcing a pre-suit deposition outweigh the burdens to Catholic Charities. Given Catholic Charities' cooperation with the investigation, the documents it produced, and its provision of a sworn statement answering the OAG's questions, the trial court was within its discretion to deny the Rule 202 petition. When a mandamus petition presents a close call based on evidence before a trial court and the standard of review is abuse of discretion, appellate courts should not substitute their judgment for that of the trial court. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). Accordingly, we deny the OAG's request for mandamus relief.

/s/Scott K. Field

Scott K. Field
Justice

Panel consists of Chief Justice Brister and Justices Field and Farris. (Brister, C.J. dissenting).