# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00758-CV

**Charles Holt, Mike Dixon, Tim Nations, and Leonel Acevedo, Appellants**

**v.**

**Texas Department of Insurance–Division of Workers' Compensation; Commissioner Ryan Brannan, in his official capacity as DWC Commissioner; the State of Texas through the Honorable Ken Paxton, in his official capacity as Attorney General of Texas; and the City of Austin, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT NO. D-1-GN-16-003000, HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Appellants Charles Holt, Mike Dixon, Tim Nations, and Leonel Acevedo sued the Texas Department of Insurance–Division of Workers' Compensation ("the Division"), Division commissioner Ryan Brannan, the State of Texas through the Attorney General, and the City of Austin—Nations's employer and a self-insured political subdivision—complaining about the "backdating" of their dates of maximum medical improvement ("MMI"), which resulted in the loss of temporary income benefits.[1] Appellants challenge the trial court's granting of the pleas to the jurisdiction filed by appellees. As explained below, we will affirm the trial court's orders.

---

[1] The original petition was filed by Holt, Dixon, and Nations; Acevedo joined later as a plaintiff. The suit also named as defendants several workers' compensation insurance carriers, but other than the City, those defendants are not part of this appeal. We will refer to the State of Texas and the Attorney General together as "the State" and to the Texas Department of Insurance–Division of Workers' Compensation and Commissioner Brannon together as "TDI."

**Standard of Review**

Absent legislative waiver, sovereign immunity bars an action against the State and its political subdivisions. *Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 620 (Tex. 2011). It does not, however, "bar a party from seeking judicial review of an agency's action that is alleged to violate a vested property or other constitutional right." *LMV-AL Ventures, LLC v. Texas Dep't of Aging & Disability Servs.*, 520 S.W.3d 113, 127 (Tex. App.—Austin 2017, pet. denied). Further, the Uniform Declaratory Judgments Act ("the UDJA") expressly waives sovereign immunity when a person whose rights, status, or other legal relations are affected by a statute sues under the UDJA to have a trial court determine "'any question of construction or validity arising under'" the statute. *McLane Co. v. Texas Alcoholic Beverage Comm'n*, 514 S.W.3d 871, 875 (Tex. App.—Austin 2017, pet. denied) (quoting Tex. Civ. Prac. & Rem. Code § 37.004(a)). In such a lawsuit, the Attorney General must "be served with a copy of the proceeding and is entitled to be heard." Tex. Civ. Prac. & Rem. Code § 37.004(a).

However, the UDJA "does not enlarge the trial court's jurisdiction but is merely a procedural device for deciding cases already within a court's jurisdiction." *Sefzik*, 355 S.W.3d at 621-22 (cleaned up). "[A] litigant's couching its requested relief in terms of declaratory relief does not alter the underlying nature of the suit." *Texas Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 388 (Tex. 2011). Further, the UDJA does not waive immunity when the asserted constitutional claim is not viable as a matter of law. *Texas Educ. Agency v. American YouthWorks, Inc.*, 496 S.W.3d 244, 263-64 (Tex. App.—Austin 2016), *aff'd*, *Honors Acad., Inc. v. Texas Educ. Agency*, 555 S.W.3d 54 (Tex. 2018); *see also Sawyer Tr.*, 354 S.W.3d at 392 ("where the question

2

of who owns the property is the only issue and title and possession are the only available remedies, the record and the briefs show conclusively that the Trust does not have a constitutional takings claim for compensation"); *LMV-AL Ventures*, 520 S.W.3d at 128-29 (noting that plaintiff had not specified which constitutionally protected rights were at issue and holding that plaintiff must present facts showing due-process violations rather than merely asserting legal conclusions of due-process violations or deprivations of property rights).

Another exception to sovereign immunity is the *ultra vires* exception, under which "claims may be brought against a state official for nondiscretionary acts unauthorized by law." *Sefzik*, 355 S.W.3d at 621. However, in a case asserting an *ultra vires* act, the proper defendant is not the agency itself but the state official whose acts or omissions allegedly violated the plaintiff's rights. *Id.* "[T]he UDJA does not waive *the state's* sovereign immunity when the plaintiff seeks a declaration of his or her rights under a statute or other law. Very likely, the same claim could be brought against the appropriate state official under the *ultra vires* exception, but the state agency remains immune." *Id.* (emphasis added) (discussing *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372-73 (Tex. 2009)).

Finally, the Administrative Procedure Act ("the APA") allows a plaintiff to challenge an administrative rule's validity or applicability; in such a challenge, the state agency must be made a party. Tex. Gov't Code § 2001.038(a), (c). Such an action must allege that the rule or its threatened application interferes with, impairs, or threatens to interfere with or impair the plaintiff's legal right or privilege. *Id.* § 2001.038(a). A trial court's "jurisdiction to grant such relief under the UDJA is much narrower than with claims under section 2001.038. "The UDJA does not provide a

3

general waiver of sovereign immunity for claims within its scope, only a limited waiver encompassing, of chief importance here, claims against the State or its agencies to challenge the 'validity' of a statute." *Texas Dep't of State Health Servs. v. Balquinta*, 429 S.W.3d 726, 746 (Tex. App.—Austin 2014, pet. dism'd).

In reviewing a trial court's granting of a plea to the jurisdiction, which challenges the court's authority to consider the questions presented either based on the sufficiency of the plaintiff's pleadings or on the existence of jurisdictional facts, we ask whether the trial court properly determined the plea as a matter of law. *American K-9 Detection Servs., LLC v. Freeman*, 556 S.W.3d 246, 267 (Tex. 2018); *see also Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Envtl. Quality*, 307 S.W.3d 505, 515 (Tex. App.—Austin 2010, no pet.) (sovereign immunity bars trial court from granting relief unless party properly invokes court's jurisdiction by alleging unconstitutional or *ultra vires* action). "A defendant can use a plea to challenge jurisdiction based on the sufficiency of the plaintiff's pleadings or on the existence of jurisdictional facts." *Freeman*, 556 S.W.3d at 267. "But when the evidence (1) creates a fact question about jurisdiction and (2) implicates the case's merits, the trial court cannot grant the plea and the fact-finder must resolve the fact question." *Id.* (cleaned up). We review whether a fact question exists by taking as true all evidence favorable to the nonmovant and by indulging every reasonable inference and resolving any doubts in his favor. *Id.* "Sovereign immunity from suit defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction." *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004).

4

**Statutory Framework**

TDI is the state agency designated to oversee and administer the State's workers' compensation system. Tex. Lab. Code §§ 402.001(a), .002(a). TDI is thus empowered and required to adopt rules "necessary for the implementation and enforcement of" the Act. Chapter 408 of the labor code specifically governs workers' compensation benefits, *see id*. §§ 408.001-.222, and it provides that TDI may order a claimant to undergo an examination by a designated doctor, see *id.* § 408.0041. Such an examination may be ordered to resolve questions about the impairment caused by the compensable injury, whether the claimant has reached MMI, the extent of his compensable injury, whether his disability is a direct result of the work-related injury, the claimant's ability to return to work, and similar issues. *Id.* § 408.0041(a).

If a claimant has a compensable disability and has not reached MMI, he is entitled to temporary income benefits,[2] *id.* § 408.101(a), which continue until the employee reaches MMI, *id.* § 408.102(a). Once he reaches MMI, the employee is entitled to impairment income benefits.[3] *Id.* § 408.121(a); *see id.* § 408.0041(k) (if designated doctor determines claimant has reached MMI, insurance carrier may immediately suspend or reduce temporary income benefits). Under certain circumstances, he may also be entitled to supplemental income benefits. *See id* §§ 408.141-.151.

---

[2] The Act provides a formula for calculating temporary income benefits: either 70 percent of the difference between the claimant's average weekly wage and his weekly earnings after injury or 75 percent of that difference if the claimant earns less than $10 an hour. Tex. Lab. Code § 408.103(a).

[3] Impairment income benefits equal 70 percent of the claimant's average weekly wage, subject to a floor of 15 percent of the state average weekly wage and certain caps. *Id*. §§ 408.061, .062, .126.

The Act requires TDI to establish a process governing how an insurance carrier may recoup overpaid income benefits from future income benefit payments.[4]  *Id.* § 408.0815.

The MMI examination performed under section 408.0041 must be provided by "the next available doctor on [TDI's] list of certified designated doctors" with appropriate credentials. *Id.* § 408.0041(b).  Section 408.0041 includes provisions intended to avoid undue influence on the designated doctor,[5] as well as a provision allowing a claimant to have his MMI and impairment rating determined by his treating doctor or "another doctor to whom the employee is referred by the treating doctor" under certain circumstances.  *Id.* § 408.0041(d), (f-2).  Once a claimant is certified as having reached MMI by a doctor other than his treating doctor, that decision is submitted to the treating doctor, who must indicate agreement or disagreement with the decision.  *Id.* § 408.123(a).

Pursuant to those legislative directives, TDI has promulgated rules to govern the workers' compensation process.  *See generally* 28 Tex. Admin. Code §§ 41.1-180.78 (2018) (Tex. Dep't of Ins., Div. of Workers' Comp.).  MMI is defined by those rules as "the earliest date after which, based on reasonable medical probability, further material recovery from or lasting improvement to an injury can no longer reasonably be anticipated," and it generally occurs no later than "the expiration of 104 weeks from the date on which income benefits begin to accrue."  *Id.* § 130.1(b)(1) (TDI, Certification of Maximum Medical Improvement and Evaluation of Permanent

---

[4]  *See* 28 Tex. Admin. Code § 126.16 (2018) (Tex. Dep't of Ins., Div. of Workers' Comp., Procedures for Recouping Overpayments of Income Benefits).

[5]  TDI is also required to develop rules to govern the process under which a doctor becomes certified as a designated doctor and to "develop rules to ensure that a designated doctor called on to conduct an examination under Section 408.0041 has no conflict of interest in serving as a designated doctor."  Tex. Lab. Code § 408.1225.

Impairment). MMI can only be certified by a "certifying doctor"—the employee's treating doctor; a doctor to whom the treating doctor has referred the employee for MMI evaluation; a designated doctor;[6] or a doctor selected by the insurance carrier and approved by TDI to evaluate MMI after a designated doctor has performed such an evaluation. *Id.* § 130.1(a)(1)(A).

To certify that an employee has reached MMI, the certifying doctor shall review medical records; perform a complete exam "for the explicit purpose of determining MMI (certifying examination)"; assign a specific date at which MMI was reached; and submit certain required reports and documentation. *Id.* § 130.1(b)(4). The date of MMI "may not be prospective or conditional," and the date of MMI "may be retrospective to the date of the certifying exam." *Id.* Once an employee receives an MMI date, he must be assigned an impairment rating, which "must be assigned for the injured employee's condition on the date of MMI." *Id.* § 130.1(b)(2). The certifying doctor must assign the employee's impairment rating and in doing so must use "the rating criteria contained in the appropriate edition of the AMA Guides to the Evaluation of Permanent Impairment, published by the American Medical Association (AMA Guides)." *Id.* § 130.1(c)(2).

Finally, the Official Disability Guidelines (ODG) of which appellants complain are referred to in rule 137.100, which requires health care providers to *treat* workers' compensation patients "in accordance with the current edition of the Official Disability Guidelines-Treatment in Workers' Comp, excluding the return to work pathways, (ODG), published by Work Loss Date Institute."[7] *Id*. § 137.100(a) (2018) (TDI, Treatment Guidelines).

---

[6] *See id.* § 408.0041.

[7] The ODG are also referred to in two rules related to pharmaceutical benefits. *See* 28 Tex. Admin. Code §§ 134.530, .540 (2018) (TDI, Requirements for Use of the Closed Formulary for

## Procedural and Factual Background

Holt, Dixon, and Acevedo were employees of private companies, and Nations was an employee of the City, which is a self-insured political subdivision. All four appellants suffered work-related injuries. Holt was injured on December 9, 2013, and on June 9, 2015, a designated doctor determined that his date of MMI was February 5, 2015, and that his impairment rating was 10 percent. Acevedo was injured February 13, 2015, and a designated doctor determined that his date of MMI was November 3, 2015, and that his impairment rating was 5 percent.[8]

Dixon, Holt, and Nations filed their original petition against appellees, and Acevedo joined the suit as a plaintiff about a year later. Appellants sued the State and TDI, challenging administrative rules that allowed for the "backdating"[9] of appellants' MMI dates; the required use of the ODG; and the "designated doctor system," which they asserted was unfair because some of the doctors worked for insurance carriers.[10] Appellants also sued their workers compensation

---

Claims Not Subject to Certified Networks and Requirements for Use of the Closed Formulary for Claims Subject to Certified Networks).

[8] The record only includes such information about Holt and Acevedo.

[9] Appellants use the term "backdating" to refer to a designated doctor assigning an MMI date that is retrospective to the date of the MMI examination. *Id.* § 130.1(b)(4) (2018) (TDI, Certification of Maximum Medical Improvement and Evaluation of Permanent Impairment). For purposes of this discussion, we will use the same term.

[10] Appellants' pleadings are somewhat vague about the specific rules or statutes being challenged. Appellants stated that they were challenging "[a]ny . . . rules or policies or instructions that allow for backdating MMIs prior to the certifying examination," but did not state which rules or policies are at issue. We take this to be challenging Rule 130.1, which provides that an MMI date "may not be prospective or conditional" and "may be retrospective to the date of the certifying exam." *Id.* Appellants also asserted that allowing MMI backdating "would make the [Texas Workers' Compensation Act] unconstitutional" without specifying whether they were challenging any provision of that Act. Appellants next argued that Rule 137.100, which they contended required

8

insurance carriers, including the City. In addition, Holt and Acevedo challenged the final administrative orders in their contested case proceedings. Dixon and Nations did not, having not completed the underlying administrative process that would entitle them to judicial review. *See* Tex. Lab. Code § 410.251 (claimant who has exhausted administrative remedies may seek judicial review). Appellants sought declaratory relief under the UDJA, *see* Tex. Civ. Prac. & Rem. Code §§ 37.001-.011, as well as mandamus and injunctive relief.

Appellees filed pleas to the jurisdiction—the State and TDI filed separate pleas, both addressing claims leveled by all appellants, while the City's only addressed Nations's claims. The State's plea asserted that the State was not a proper defendant to appellants' UDJA claims; that the State did not have enforcement authority under the Texas Workers' Compensation Act, *see* Tex. Lab. Code §§ 401.002-419.007 ("the Act"); that the law requiring that the Attorney General be "served with a copy" of a lawsuit challenging a statute did not waive sovereign immunity; that appellants

---

"designated doctors and all doctors [to] apply the ODG," "impermissibly allowed a private company to adopt rules without proper oversight by" TDI. *See id.* § 137.100(a) (2018) (TDI, Treatment Guidelines). However, although appellants argued that the ODG were "impermissibly applied . . . as mandated criteria rather than guides to help determine entitlement to medical treatment," the ODG are only referred to in the context of treatment plans, not in the rules governing the certification of MMI dates or impairment ratings. *See id.* Appellants further argued that TDI's "designated doctor system is not independent and fair" but did not explain what statutes or rules were unfair, instead only asking the trial court to "declare and strike down any statutory provisions or administrative rules or policies" that led to bias or a conflict of interest (a review of the relevant statutes and rules, however, indicates that TDI has attempted to ensure that the designated doctor system removes potential bias). Appellants also challenged unspecified provisions that "mandat[e] substantial evidence review of medical disputes," asserting that such a requirement violated the Open Courts provision of the Texas Constitution, *see* Tex. Const. art. I, § 13, because it erected an unreasonable financial barrier and stripped them of meaningful remedies. Finally, appellants specifically attacked section 408.221(b) of the labor code but possibly made a broader, unspecified challenge to other provisions related to attorney's fees. *See* Tex. Lab. Code § 408.221(b).

9

lacked standing; and that Nations and Dixon had not exhausted their administrative remedies and that none of the individual appellants had challenged the MMI backdating in the underlying administrative proceedings. TDI's plea asserted that appellants lacked standing because they had not presented a justiciable controversy; that appellants' UDJA claims sought a remedy redundant to judicial review but that appellants had failed to exhaust their administrative remedies; that appellants had not asserted a valid *ultra vires* claim under the UDJA; that appellants had not asserted a valid constitutional claim under the UDJA; and that appellants' challenge to Rule 137.100 failed on its merits. Finally, the City's plea asserted that Nations's claims against the City should be dismissed because (1) Nations had not exhausted his administrative remedies; (2) Nations's UDJA claim was barred by governmental immunity because he sought a declaration that the City's actions were unlawful rather than challenging a statute or rule; and (3) Nations's UDJA claim sought remedies that were redundant to the remedy of seeking judicial review under the administrative code.

The trial court granted appellees' pleas to the jurisdiction, dismissing all of the claims against TDI and the State and dismissing them "as defendants from this case." The trial court further dismissed appellants' claims for declaratory, mandamus, and injunctive relief, which disposed of all of the claims filed by Dixon and Nations. The court explained that the only claims remaining were Holt's and Acevedo's suits for judicial review of the final decisions in their administrative cases.

On appeal, appellants assert that they have been subjected to unconstitutional and improperly delegated rulemaking; that TDI improperly allowed retroactive MMI backdating, resulting in an improper taking; that TDI improperly allowed certain doctors to work for insurance carriers at the same time they worked as medical adjudicators, resulting in their being biased against

10

appellants; and that TDI had violated appellants' constitutional rights by refusing to allow for the recovery of attorney's fees when income benefits are exhausted. Appellants argue that they did not seek redundant remedies because they sought injunctive and mandamus relief beyond the individual agency orders. They further contend that all of the parties, including the Attorney General, the State, TDI itself, and TDI's commissioner, were proper parties.

**Discussion**

We first consider the City's assertion that appellants have waived any arguments they might have against the granting of the City's plea. The City correctly notes that appellants' brief nowhere discusses appellants' claims against the City, as Nations's employer and a self-insured municipality. Appellants' brief only discusses "the State Defendants"—"the DWC Commissioner and the DWC, and the State of Texas through the Attorney General"—and only complains of the trial court's orders granting the pleas to the jurisdiction filed by those parties. Their prayer asks only that this Court reverse the trial court's granting "of the State Appellee's [sic] pleas to the jurisdiction" and does not refer to their claims against the City. Nor do appellants explain in their reply brief how it was error to dismiss their claims against the City or what relief they seek against the City. We thus agree that appellants have waived any complaints they might have against the portions of the trial court's orders that granted the City's plea to the jurisdiction. *See* Tex. R. App. P. 38.1(i); *Stable Energy, L.P. v. Newberry*, 999 S.W.2d 538, 554-55 (Tex. App.—Austin 1999, pet. denied). We affirm the dismissal of the City as defendant in the underlying proceeding.

We next consider whether the State, through the Attorney General, was a proper party to the lawsuit. Appellants insist that the State was a proper party because they challenged the

11

constitutionality of a statute and the law requires that the Attorney General be served with a copy of a petition raising such a claim. Tex. Civ. Prac. & Rem. Code § 37.006(b). However, section 37.006(b) distinguishes between a suit challenging the validity of a municipality's ordinance or franchise, in which case the municipality "must be made a party," and a suit challenging the constitutionality of a statute, ordinance, or franchise, in which case a copy of the petition must be served on the Attorney General, who "is entitled to be heard." *Id*. Reading section 37.006(b) as requiring that the State itself to be made a party in every case involving a constitutional challenge to a statute would render meaningless the distinction made by the legislature in its choice of language. *See Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018) (courts read statutes "contextually to give effect to every word, clause, and sentence" and "every word or phrase is presumed to have been intentionally used with a meaning and a purpose"); *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 389-90 (Tex. 2014) (courts presume legislature chose statutory language deliberately and purposefully and will not interpret statute "in a manner that renders any part of the statute meaningless or superfluous"). Thus, although the governmental *agency* tasked with enforcing a statute may be a proper party in a suit challenging the constitutionality of the statute, *see Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 634 (Tex. 2010) (because UDJA allows statutory challenges that might be binding on governmental *entities*, those "entities must be joined in those suits"), we cannot read section 37.006(b) as requiring that the State itself, through the Attorney General, be made a party. Instead, we must read it as requiring parties to provide the Attorney General with notice of lawsuits

12

challenging the constitutionality of a statute and as giving the Attorney General discretion to determine whether to intervene.

Our conclusion is bolstered by a review of section 402.010 of the government code, which provides that "if the attorney general is not a party to or counsel involved in the litigation," the trial court must "serve notice of the constitutional challenge and a copy of the petition, motion, or other pleading that raises the challenge on the attorney general." Tex. Gov't Code § 402.010(a). It further provides that "[t]his section or the state's intervention in litigation in response to notice under this section does not constitute a waiver of sovereign immunity." *Id.* § 402.010(d). It would make little sense for the legislature to have enacted such provisions if the State through the Attorney General was a necessary party in all suits that involve a challenge to a statute's constitutionality.[11] In this case, the State contested being named as a party, and the trial court did not err in granting the State's plea to the jurisdiction as to the claims made against it through the Attorney General.

---

[11] Appellants assert that in *State v. Naylor*, the "Texas Supreme Court reemphasized that the Attorney General is a proper party" in such a suit, citing to a specific footnote. 466 S.W.3d 783, 808 n.43 (Tex. 2015) (Willett, J., dissenting). However, that footnote is in a dissent and supports the proposition that the Attorney General had "standing to defend statutory and constitutional enactments against constitutional attack," noting that section 37.006 imposes a "notice requirement in the declaratory-judgment context" similar to the requirements of section 402.010 of the government code. *Id.* at 808 & n.43; *see* Tex. Gov't Code § 402.010(a) ("if the attorney general is not a party to or counsel involved in the litigation, serve notice of the constitutional challenge and a copy of the petition, motion, or other pleading that raises the challenge on the attorney general"). Although the dissent goes on to say that section 37.006(b) "makes clear, if it were not already so, that the State has a sufficient interest to be made a party in a case where the original plaintiff seeks a holding that a state statute is unconstitutional," *Naylor*, 466 S.W.3d at 808 n.43, we do not believe that a footnote in a dissent should be viewed as the supreme court's "reemphasize[ing]" the idea that the State through the Attorney General may be properly made a defendant in every case involving a constitutional challenge to a statute.

We now turn to whether the trial court erred in dismissing appellants' claims against TDI and the Commissioner. Appellants' pleadings are so vague as to be difficult to assess and their briefing is at times insufficient under the rules.[12] *See* Tex. R. App. P. 38.1 (statement of facts section must state relevant facts concisely and without argument; argument section must contain clear and concise argument, with appropriate citation to authorities and appellate record). However, we will attempt to address appellants' arguments and challenges as far as we can discern them.

Appellants asserted in the trial court that (1) TDI improperly delegated rulemaking to a private entity by requiring that doctors rely on the ODG; (2) in allowing retroactive MMI backdating, presumably under Rule 130.1, *see* 28 Tex. Admin. Code § 130.1, TDI committed an improper taking; (3) TDI's designated-doctor provisions improperly allow certain doctors to work for insurance carriers at the same time they work as medical adjudicators; and (4) appellants' constitutional rights were violated by statutory provisions that bar the recovery of attorney's fees when income benefits are exhausted.

The UDJA does not waive immunity for challenges to a rule. *See, e.g.*, *Texas Health & Human Servs. Comm'n v. Doe*, No. 03-16-00657-CV, 2017 WL 1534209, at *3 & n.2 (Tex.

---

[12] For instance, appellants' briefing at time lacks citations to the record or to supporting authorities. *See* Tex. R. App. P. 38.1(f)-(i); *Stillwell v. Stillwell*, No. 03-17-00457-CV, 2018 WL 5024022, at *2-3 (Tex. App.—Austin Oct. 17, 2018, no pet. h.) (mem. op.) (noting that brief was "comprised largely of broad statements of general legal principles" or "what he believes the law should be" and provided "little to no substantive analysis as to how or why the recited legal principles" applied; attempting to address arguments "to the extent that we are able to discern" them; and stating that any other issues not specifically identified and supported by clear and understandable argument were waived); *see also Rubsamen v. Wackman*, 322 S.W.3d 745, 746-47 (Tex. App.—El Paso 2010, no pet.) (appellant bears burden of "discuss[ing his] assertions of error"; and appellate court has no duty to perform independent review of record and applicable law, "[n]or are we required to sift through the record in search of facts supporting" appellant's arguments).

14

App.—Austin Apr. 20, 2017, pet. denied) (mem. op.); *Texas State Bd. of Veterinary Med. Exam'rs v. Giggleman*, 408 S.W.3d 696, 708 (Tex. App.—Austin 2013, no pet.). Appellants did not challenge any TDI rules under the Administrative Procedure Act, even after that concern was raised in the various pleas to the jurisdiction. Thus, as far as appellants seek to challenge TDI rules under the UDJA—challenges to unspecified rules related to the ODG and the designated-doctor system—the trial court properly dismissed those challenges. *See Doe*, 2017 WL 1534209, at *3 & n.2. As for any attempt to challenge the designated-doctor system, whether attacking rules or statutes, appellants present no cognizable arguments on appeal that address any of those statutes or rules and thus have waived any such challenge. *See Stillwell v. Stillwell*, No. 03-17-00457-CV, 2018 WL 5024022, at *2-3 (Tex. App.—Austin Oct. 17, 2018, no pet. h.) (mem. op.); *Maverick Cty. v. Railroad Comm'n*, No. 03-14-00257-CV, 2015 WL 9583873, at *12 (Tex. App.—Austin Dec. 29, 2015, pet. denied) (mem. op.).

We now discuss appellants' challenge to rule provisions that allow for the backdating of MMI dates, which they couch as a takings claim. Although appellants do not explain which rule or rules they are challenging, we presume they are challenging Rule 130.1(b)(4).[13] *See* 28 Tex. Admin. Code § 130.1. Initially, we observe that a takings claim may only be asserted in an administrative appeal if the party first exhausts his administrative remedies and complies with jurisdictional prerequisites for suit. *City of Dallas v. Stewart*, 361 S.W.3d 562, 579 (Tex. 2012) ("a litigant must avail itself of statutory remedies that may moot its takings claim, rather than directly

---

[13] As noted earlier, providing that an MMI date "may not be prospective or conditional" and "may be retrospective to the date of the certifying exam." 28 Tex. Admin. Code § 130.1(b)(4)(C).

15

institute a separate proceeding asserting such a claim"); *see Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 552 n.9 (Tex. 2016) ("This Court has never globally exempted claims based on the Texas constitution from statutory exhaustion-of-administrative-remedies requirements, and we decline to do so today. To the contrary, we have, at least on some occasions, required exhaustion of administrative remedies before asserting claims under the Texas constitution."); *see also* 1 Ronald L. Beal, *Texas Administrative Practice & Procedure* § 9.3.1[c] (constitutional claim may be asserted for first time in appeal from agency order, but claimant who does not comply with administrative deadlines may not raise issue in separate proceeding).

Appellants insist that the supreme court's decision in *Patel v. Texas Department of Licensing and Regulation* allows Nations and Dixon to proceed without having exhausted their administrative remedies and provides that they may proceed in the face of TDI's arguments related to redundant remedies. 469 S.W.3d 69 (Tex. 2015). However, *Patel* stated that because the plaintiffs challenged both statutes (under the UDJA) and administrative rules (under the APA), the UDJA was not a redundant remedy. *Id.* at 79-80 ("Because the Threaders cannot attack the constitutionality of the statutes pursuant to Section 2001.038 of the APA, their UDJA claims are not barred by the redundant remedies doctrine."). *Patel* and its discussion of redundant remedies does not apply here, where appellants have not presented a clear challenge to any statute.[14] Nor do we read *Patel* as allowing Nations and Dixon, who did not exhaust their administrative remedies and

---

[14] Appellants state in their reply brief that "this Court is presented with an actual applied and facial Constitutional and statutory challenge from injured workers who have suffered from the challenges raised as applied not just facially," but have not identified which statutory provision they seek to challenge, presented clear argument about how that statute was unconstitutional, or provided citations to the record or to relevant authority. *See Stillwell*, 2018 WL 5024022, at *2-3.

16

do not face any administrative enforcement action, to pursue a rule challenge asserted as a takings claim.[15]  *See id*. at 78 (discussing ripeness and holding that plaintiffs who had not yet faced administrative enforcement could proceed because "threat of harm is more than conjectural, hypothetical, or remote").

As for Holt's and Acevedo's takings claim related to the backdating of their MMI dates, TDI and the State argue that the issue is waived due to insufficient briefing, noting that appellants have provided almost nothing in the way of argument, citations to the record, or citations to authority.  Assuming that the issue is properly presented, however, a trial court should grant a plea to the jurisdiction if a plaintiff asserting a takings claim cannot show that his claim is viable.  *See Texas Dep't of Transp. v. A.P.I. Pipe & Supply, LLC*, 397 S.W.3d 162, 166 (Tex. 2013).  And for a takings claim to be viable, the plaintiff must establish that a vested property interest is at stake.  *See Honors Acad.*, 555 S.W.3d at 61 ("Before any substantive or procedural due-process rights

---

[15] We similarly disagree with appellants' assertions that our opinion in *Mitz v. Texas State Board of Veterinary Medical Examiners* relieves Nations and Dixon of the need to exhaust their administrative remedies.  278 S.W.3d 17 (Tex. App.—Austin 2008, pet. dism'd).  In *Mitz*, after the board issued cease-and-desist letters, threatening action against individuals who the board accused of practicing veterinary science without a license, the individuals sued for declaratory and injunctive relief, asserting that the relevant statutes were unconstitutional.  *Id.* at 20-21.  We reversed the granting of the board's plea to the jurisdiction, holding that whether the statutes were constitutional was a question of law for the courts, not for the board.  *Id.* at 23.  Appellants do not urge that the rule provisions in question are unconstitutional on their face but instead urge that the provisions as applied to them have resulted in an unconstitutional taking of what they assert is a vested property right.  That is not a pure question of law; it involves issues of fact best left to TDI's initial review.  *See id.*  Further, this case does not present a similar fact scenario in which Nations or Dixon face agency enforcement actions—instead, their benefits proceedings have been completed, and they did not avail themselves of any further remedies available to them under the Act.

17

attach, however, the citizen must have a liberty or property interest that is entitled to constitutional protection."); *Combs v. City of Webster*, 311 S.W.3d 85, 92 (Tex. App.—Austin 2009, pet. denied).

"To have a constitutionally protected property interest, a person must have a legitimate claim of entitlement rather than a mere unilateral expectation." *Honors Acad.*, 555 S.W.3d at 61 (cleaned up). A right is "vested" if it is "something more than a mere expectancy based upon an anticipated continuance of an existing law." *Id.* (cleaned up).

Case law indicates that an injured worker has "a mere expectancy" in receiving temporary income benefits because once the worker is determined to have reached MMI, the insurance carrier may immediately stop making those payments. *See Wilson v. Texas Workers' Comp. Comm'n*, No. 12-01-00337-CV, 2003 WL 22681793, at *6 (Tex. App.—Tyler Nov. 13, 2003, no pet.) (mem. op.) (worker did not have vested property right in additional workers' compensation benefits because "he would be entitled to additional benefits only in the event his impairment rating is ultimately determined to be higher than five percent"); *see also Layton v. City of Fort Worth*, No. 02-14-00084-CV, 2014 WL 6997350, at *5 (Tex. App.—Fort Worth Dec. 11, 2014, pet. denied) (mem. op.) ("The notion that disability benefits under the [City of Fort Worth Employees' Retirement Fund] can constitute a vested right is completely incompatible with the Board's ability to immediately cease a disability pension upon a determination that a member is no longer disabled. We hold that the trial court did not err by granting the plea to the jurisdiction as to Layton's deprivation claim because he has no vested right to the disability benefits under the Fund."). The supreme court has explained that temporary income benefits "are contingent on the employee's recovery" and "require continuous monitoring to determine whether the employee has achieved the

18

statutory level of improvement." *Liberty Mut. Ins. Co. v. Adcock*, 412 S.W.3d 492, 496 (Tex. 2013); *see also Texas Workers' Comp. Ins. Fund v. Texas Workers' Comp. Comm'n*, 124 S.W.3d 813, 815 (Tex. App.—Austin 2003, pet. denied) (temporary income benefits accrue on injury and continue until MMI or end of disability); *Franklin v. Lumbermens Mut. Cas. Co.*, No. 05-96-01234-CV, 1998 WL 315749, at *1 (Tex. App.—Dallas June 17, 1998, no pet.) (not designated for publication) (payment of temporary income benefits is "dependant upon a medical determination of" MMI).

Because an injured employee is entitled to temporary income benefits only until he reaches MMI, at which point he may be entitled to a different kind of benefits, temporary income benefits are by their very nature contingent upon a doctor's determination and, therefore, cannot be considered a vested right. *See City of La Marque v. Braskey*, 216 S.W.3d 861, 864 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (right is vested if it has definitive and not simply potential existence); *see also Eldercare Props., Inc. v. Department of Human Servs.*, 63 S.W.3d 551, 556 (Tex. App.—Austin 2001, pet. denied)[16] ("[A]ny right ElderCare has to additional beds is contingent on the HOA rule being triggered by high occupancy levels of Medicaid beds in the county and on ElderCare applying for the additional beds made available by the rule. Therefore, we conclude this claim is no more than a mere expectation 'based on an anticipated continuance of existing law' and not a vested property right."). Further, the Act allows insurers to recoup from claimants certain overpayments in income benefits, and appellants have not challenged that provision in any form. *See* Tex. Lab. Code § 408.0815; *see also* 28 Tex. Admin. Code § 126.16.

---

[16] *Abrogated on other grounds by Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170 (Tex. 2004).

Appellants state that temporary income benefits paid to them "are certainly vested property rights and not an anticipation of additional benefits," but they provide no authority to support that assertion, simply arguing without citation that because the benefits were paid to them by the insurance carriers, they must be considered to be vested. However, "bare conclusions . . . are not sufficient—the pleader must allege facts that affirmatively demonstrate the trial court's subject-matter jurisdiction." *Creedmoor-Maha Water Supply*, 307 S.W.3d at 525. As explained above, we conclude that temporary income benefits are not vested property rights. Because appellants have not established that the temporary income benefits that they received before the determination of their MMI dates were vested rights, the trial court did not err in granting TDI's plea to the jurisdiction as to appellants' takings claim.

We next address appellants' challenges to the statutory provisions limiting the awarding of attorney's fees in the workers' compensation context. Appellants complain of section 408.221, which provides that "an attorney's fee may not exceed 25 percent of the claimant's recovery" unless the carrier seeks judicial review and loses, and that the attorney's fees "shall be paid from the claimant's recovery." Tex. Lab. Code § 408.221(b), (h). Appellants urge that they as claimants are on unequal footing to insurance carriers and assert that injured workers such as themselves "are unable to procure services through financial payment of an attorney even if a claimant could afford such, and this prohibits meaningful remedies being accorded to injured workers whose benefits are greatly reduced under [the Act]." However, appellants are represented by counsel in this appeal, they were represented by the same attorney in the trial court, and Holt and Acevedo, at least, were assisted at the administrative level by an ombudsman, as provided for by

20

chapter 404 of the labor code.[17] *See id.* §§ 404.101 (Office of Injured Employee Counsel shall through ombudsman program provide assistance to claimants during benefits disputes), .105 (office through ombudsman program may appear in administrative proceeding to assist claimant); *see generally id.* § 404.001-.155 ("Office of Injured Employee Counsel"). They thus have not shown that they have been harmed by the 25 percent cap.

Further, the supreme court has already considered the Act's limitation on attorney's fees, noting that the Act capped such fees at 25 percent of the claimant's recovery and holding:

> Requiring an attorney to charge a reasonable fee is a valid exercise of the Legislature's police power. The fee limitations under the Act apply to both sides to the controversy, except for the 25 percent cap. This distinction is not irrational, however, as the Legislature could have concluded that injured employees must ultimately be guaranteed at least 75 percent of the benefits provided if they are to maintain the support of themselves and their families.
>
> Nothing in the record establishes that the fee limitations are so egregious that they will result in a claimant being denied needed legal representation. Although there was testimony that some attorneys no longer accept compensation cases under the Act, there was no showing of any claimant who could not obtain counsel. Based on this record, we hold that the fee limitations do not facially violate the guarantee of due course of law or equal protection.

*Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 533 (Tex. 1995). Based on this record, we will not revisit the supreme court's conclusions in *Garcia*.

---

[17] The record does not include any information about Dixon's or Holt's administrative proceedings.

Finally, we consider appellants' apparent attempt to invoke the *ultra vires* exception to sovereign immunity. We say "apparent" because the only *ultra vires* reference in appellants' trial court pleadings is in their response to appellees' pleas to the jurisdiction, when they stated:

> The Texas Supreme Court has held that the UDJA waives a municipality's immunity against claims challenging the validity of its ordinances. The Court explained that the governmental entity retains its immunity from suit when the claimant does not challenge the validity of a statute but rather challenges a government officer's application of a statute to the claimant. The affected parties [sic] remedy *is an ultra vires suit against the government officer in his or her official capacity for prospective relief*. This would support DWC Commissioner being a party in this matter to properly apply the statutes and Constitution in question and provide a valid interpretation and application and enforcement of statutes and the Constitution.

(Emphasis added, citations omitted.) Appellants recite exactly the same assertion in their appellate briefing. Appellants did not make an *ultra vires* claim in their original petitions and made only passing reference to the possibility of an *ultra vires* claim in their response filed in the trial court, without explaining how the Commissioner is asserted to have acted beyond his statutory authority. *See Texas Dep't of Ins. v. Brumfield*, No. 04-15-00473-CV, 2016 WL 2936380, at *5 (Tex. App.—San Antonio May 18, 2016, no pet.) (mem. op.) ("Brumfield's pleadings regarding the Commissioner simply state that he 'acted beyond [his] statutory authority in failing to properly apply, interpret, and enforce the statute and rules for which declaratory relief is sought.' Brumfield's pleadings fail to include any specific facts indicating that the Commissioner acted without legal authority or failed to perform a purely ministerial act."). Nor do appellants' briefs provide any further argument or explanation of any alleged *ultra vires* acts by the Commissioner. Appellants have thus waived any *ultra vires* claim they may have had against the Commissioner.

22

## Conclusion

We have attempted to discern the essence of appellants' complaints and to avoid finding waiver where possible. To the degree analysis is appropriate, we have overruled appellants' arguments. Appellants ask that the cause be remanded to give them the opportunity to replead. However, when the record reflects that the pleadings or facts conclusively negate the existence of jurisdiction, *that the plaintiff had a full and fair opportunity in the trial court to develop the record and amend the pleadings*, or that the plaintiff would be unable to establish jurisdiction, the case should be dismissed without remand. *Harris Cty. v. Annab*, 547 S.W.3d 609, 616 (Tex. 2018). In this case, Dixon and Nations did not exhaust their administrative remedies, and no amount of repleading will cure that issue. Further, appellants have not explained, despite opportunities to do so both in the trial court and on appeal, how a vested property right is at stake, nor did they attempt in the months the pleas to the jurisdiction were pending to replead their claims so as to show such a right. *See id.*; *see also A.I. Divestitures, Inc. v. Texas Comm'n on Envtl. Quality*, No. 03-15-00814-CV, 2016 WL 3136850, at *9 (Tex. App.—Austin June 2, 2016, no pet.) (mem. op.) ("A.I. had the opportunity to allege facts and present evidence demonstrating that it fell within an exception to the mootness doctrine in response to the Commission's first and amended pleas to the jurisdiction yet failed to do so."); *Rogge v. City of Richmond*, 506 S.W.3d 570, 578-79 (Tex. App.—Houston [1st Dist.] 2016, no pet.) ("The pleadings already were amended in response to the jurisdictional challenge, and the Rogges have not suggested how they would amend their pleadings if given a second opportunity to do so."). Finally, as to appellants' attempted challenges to various TDI rules, despite the fact that the pleas to the jurisdiction noted that a rules challenge may not be

23

brought under the UDJA, appellants did not amend their pleadings to assert a claim under the APA, as would be proper, and we do not believe remand to allow them to assert their claims under an entirely new vehicle is appropriate. Nor will we allow for remand on arguments that appellants have waived by insufficient briefing in this court. We affirm the trial court's orders granting appellees' pleas to the jurisdiction.

_____

Cindy Olson Bourland, Justice

Before Justices Puryear, Bourland, and Toth

Affirmed

Filed: December 20, 2018