**Affirm and Opinion Filed September 15, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-19-00386-CV

### ACE AMERICAN INSURANCE COMPANY, Appellant
### V.
### CLAYTON D. ELMER, Appellee

**On Appeal from the 14th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-06888**

## MEMORANDUM OPINION

Before Chief Justice Burns, Justice Molberg, and Justice Carlyle
Opinion by Justice Molberg

Ace American Insurance Company (Ace) appeals the judgment for Clayton

D. Elmer in its suit for judicial review of a Decision and Order (Decision) issued in

favor of Elmer by the Texas Department of Insurance, Division of Workers'

Compensation Division (Division), after a contested case hearing regarding injuries

sustained by Elmer while working as a truck driver for Heartland Express.[1]

---

[1] Elmer was not represented by counsel at the Division proceedings. Instead, he utilized the free
ombudsman assistance provided for pro se claimants in administrative disputes.

Following a bench trial, the trial court entered judgment in favor of Elmer and awarded attorney's fees.

Ace raises four issues on appeal: (1) the trial court erred by finding Elmer's work injury extends to and includes depression, anxiety disorder, and chronic pain syndrome; (2) the trial court erred by finding Elmer's date of maximum improvement is June 21, 2016, with an impairment rating of forty-five percent; (3) the trial court erred by awarding attorney's fees because Elmer should not have prevailed at trial, or, alternatively, Elmer waived his fees by presenting no supporting evidence; and (4) the trial court entered an invalid judgment because it neither conformed with the evidence at trial nor complied with Texas Labor Code section 410.258.  TEX. LAB. CODE § 410.258.  Elmer did not file a response brief.

We affirm the trial court's judgment.

## BACKGROUND

On June 16, 2014, Elmer injured himself at work when his foot slipped while stepping out of a tractor-trailer (the work injury).  He reported the incident approximately an hour-and-a-half later when he checked in with his dispatcher regarding his route to Waco.  Elmer stopped several times along his route to get ice to relieve pain in his shoulder and knee.  After finishing his route and dropping off the truck, his wife took him to the emergency room.  Elmer eventually required surgeries on his left knee and left shoulder.

Due to post-injury pain, Elmer was able to engage only in limited physical activity. In February 2016, the parties agreed Elmer's defined compensable injury included a left-knee medial meniscus tear, a left-knee lateral meniscus tear, a left-shoulder rotator cuff tear (original and recurrent), and left-shoulder bicipital tenosynovitis. At that time, Elmer did not claim he suffered chronic pain, anxiety, or depression related to the work injury.

On January 30, 2017, the Division held a contested case hearing. Elmer was the only witness, but he presented multiple reports from workers' compensation doctors and medical care providers who had examined him and determined he suffered from chronic pain syndrome, depression, and anxiety as a direct result of the effects of the compensable injury. Elmer was treated for chronic pain syndrome, depression, and anxiety by several medical providers. Experts who opined in favor of Elmer included Dr. Maggie Perish, Dr. Tommy Overman, Dr. Robert Panzarella, and Marce Hufnagel, M.Ed., LPC.

Dr. Panzarella—the Division-appointed designated doctor—opined that Elmer's compensable injury extended to and included chronic pain syndrome, depression, and anxiety, which arose from and were directly related to the work injury. According to Dr. Panzarella, Elmer reached maximum medical improvement (MMI) on June 21, 2016, with a whole person impairment rating of forty-five percent. The insurance carrier's expert witness, Dr. Andrew Brylowski, who had examined and talked with Elmer for approximately three hours, determined Elmer

reached MMI on June 2, 2016, with a whole person impairment rating of eleven percent.

Finding in favor of Elmer, the Division's Decision noted Elmer "presented multiple reports from multiple care providers who have determined that [Elmer] is experiencing chronic pain syndrome, depression, and anxiety as a direct result of the effects of the compensable injury." Dr. Brylowski, the "carrier-selected post-designated doctor," was the "*only doctor* who did not believe that [Elmer] sustained the disputed conditions," i.e., chronic pain syndrome, depression, and anxiety (emphasis added). According to the Division, Dr. Brylowski's "analysis of the results of his testing was contradictory." The Decision observed:

> On the one hand, [Dr. Brylowski] stated that his testing showed that [Elmer] was not overreporting his symptoms and that the tests reflected a technical validity of the results. Then, in the same report, he maintained that the testing was consistent with overreporting that allegedly invalidated a mental and behavioral impairment rating. Yet Dr. Brylowski also stated that people with some of the test results he obtained tended to experience anxiety, depression, and withdrawal from every day activities.

The Decision further stated that "Dr. Brylowski's opinion was, at best, much less persuasive than the rest of the medical record" and was "contrary to [Elmer's] testimony and all of the other medical evidence in the record."

The Division concluded Elmer's chronic pain syndrome, anxiety disorder, and depression were caused or aggravated by, and did arise out of or naturally flow from, the work injury. It further concluded the MMI date was June 21, 2016, with an impairment rating of forty-five percent. Ace was ordered to pay benefits in

–4–

accordance with the Division's Decision. After exhausting its administrative remedies, Ace appealed the adverse determination in district court.

The only evidence presented during the bench trial was Elmer's live testimony and Dr. Brylowski's expert report and deposition testimony. At trial, Elmer testified that prior to the work injury, he was not being treated for depression, anxiety, or chronic pain; and his chronic pain developed after the injury and "limited his ability to do physical activities." Elmer told the trial court he received both medical and psychological treatment as a result of the work injury. Over Ace's objection, Elmer testified he was "first diagnosed with depression or anxiety" in "[m]id 2015" by Dr. Perish, who gave him "psychological testing" and treatment; "[Dr. Perish's] records were in evidence at the Contested Case Hearing"; other counselors also treated Elmer and "[a]s part of the Workers' Comp process [he was] requested or ordered to go to examinations by [three] doctors other than [his] treating doctors"; and he received treatment with counselors for anxiety, depression, and chronic pain. The trial court overruled Ace's hearsay objection on the grounds that statements made for the purpose of medical treatment are an exception to the hearsay rule. *See* TEX. R. EVID. 803(4). Elmer testified that for and during the course of his medical treatment:

> Things we spoke about was my love to work, my love of family and how it's diminished of where I don't see my family hardly any more; the difficulties of just daily living and self-care; and just empty and worthless feeling; not being able to be a provider.

The trial court found in favor of Elmer and entered findings of fact and conclusions of law. In its Final Judgment, the trial court stated:

> Defendant Clayton Elmer credibly testified as to his treatment of chronic pain, depression and anxiety as part of his workers' compensation injury, and of examples of pain interfering with acts of daily living, as well as difficulties with his left shoulder and left knew. He testified he was diagnosed and treated for these conditions after his 2014 compensable injury by his workers compensation doctors, and before a subsequent injury in 2015 at physical therapy.

## ANALYSIS

### Sufficiency of the Evidence

Ace's first and second issues and the first part of his fourth issue challenge the sufficiency of the evidence to support the trial court's judgment. In its first issue, Ace argues, "[t]he trial court erred in finding Elmer's work injury extends to and includes depression, anxiety disorder, and chronic pain syndrome, as the only expert evidence offered at trial found those conditions were not related, the trial court relied on information not admitted during trial, and the trial court held ACE to the incorrect burden of proof." Ace's second issue contends "[t]he trial court erred in finding Elmer's date of maximum medical improvement is June 21, 2016 with an impairment rating of 45% as it failed to adopt the only valid impairment rating submitted into evidence . . . ." And the first part of Ace's fourth issue argues the

trial court's judgment was not valid because it "fail[ed] to conform to the evidence presented at trial."[2]

## Standard of Review

We apply a "modified de novo review" standard to a judicial review of a Texas Workers' Compensation Commission Appeals Panel's final decision. *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 530 (Tex. 1995). Under this standard, a trial court may review "only those issues finally decided by the Division's Appeals Panel." *Tex. Dept. of Ins., Workers' Comp. Div. v. De Los Santos*, 446 S.W.3d 800, 806 (Tex. App.—San Antonio 2014, no pet.). The party seeking judicial review of an appeals panel decision bears the burden of proof by a preponderance of the evidence. *Id.*; TEX. LAB. CODE § 410.303. In a bench trial, the trial court "*shall consider* the decision of the appeals panel" in rendering its judgment.[3] TEX. LAB. CODE § 410.304(b) (emphasis added); *see also De Los Santos*, 446 S.W.3d at 806 ("When a court is the trier of fact, it is to consider the decision of the Division's Appeals Panel."); *Tex. Workers' Comp. Ins. Fund v. Simon*, 980 S.W.2d 730, 737 at n.4 (Tex. App.—San Antonio 1998, no pet.).

---

[2] The second part of Ace's fourth issue contends "the Texas Department of Insurance was not informed of the proposed judgment 30 days prior the entry [sic] of a final order as required by the Texas Labor Code § 410.258."

[3] The fact finder, however, is not required to accord the decision any special weight. *See Bruno v. Trinity Univ. Ins. Co. of Kan.*, No. 13-03-038-CV, 2004 WL 2904308, at *1 (Tex. App.—Corpus Christi, Dec. 16, 2004, no pet.) (mem. op.).

Following a bench trial, a trial court's findings are reviewed according to the legal sufficiency standards by which jury findings are measured. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). In determining whether the evidence is legally sufficient to support a finding, we consider the evidence in the light most favorable to the judgment and indulge every reasonable inference that would support it. *See City of Keller v. Wilson*, 168 S.W.3d 802, 826–27 (Tex. 2005). We credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *Id*. at 827. When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is less than a scintilla and, in legal effect, is no evidence. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (citing *Kindred v. Con/Chem., Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)). More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Ford Motor Co.*, 135 S.W.3d at 601 (citing *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). The fact finder is the sole judge of the credibility of the witnesses and the weight give their testimony. *City of Keller*, 168 S.W.3d at 819. It is the province of the fact finder to resolve any conflicts in the evidence. *Id.* at 820. So long as the evidence falls within a zone of reasonable disagreement, we may not substitute our judgment for that of the fact finder. *Id.* at 822.

**Section 410.258's Notice Requirement Does Not Apply
To The Trial Court's Judgment In This Case**

We first address Ace's argument in the second part of its fourth issue that the trial court's failure to file any proposed judgment with the Division not later than the thirtieth day before the date on which the court is scheduled to enter the judgment renders the judgment void. We disagree with Ace. Section 410.258 would have required Ace—as the party initiating the proceeding—to give the Division advance notice of a "proposed default judgment" or "proposed agreed judgment." TEX. LAB. CODE § 410.258(a). Here, the trial court's judgment followed a contested trial. Thus, section 410.258's notice requirement did not apply to the trial court's judgment. *Clewis v. Safeco Ins. Co. of America*, 287 S.W.3d 197, 202–203 (Tex. App.—Fort Worth 2009, no pet.) (concluding section 410.258(a)'s notice requirement only applies to "judgments entered apart from completed adversarial proceedings" and not judgments following a contested trial); *see also Tex. Prop. & Cas. Ins. Guar. Ass'n for Petrosurance Cas. Co. v. Brooks*, 269 S.W.3d 645, 649–50 (Tex. App.—Austin 2008, no pet.) (concluding section 410.258(a) does not apply to judgments "entered by the trial court that were not submitted or proposed to the court by agreement of the parties or the result of a default by the defendant"). We resolve the second part of Ace's fourth issue against it.

## Ace Failed to Provide A Complete Record On Appeal

It is the appellant's burden to supply an appellate court with a complete record demonstrating why the trial court reversibly erred. *Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990). Ace did not do so in this case.

The trial transcript reflects that during his direct examination of Elmer, Ace's counsel directed Elmer and the trial court to the records and transcript of the case hearings before the administrative agency.

> The Court: Identify the records for [Elmer's attorney], please.
>
> [Ace's attorney]: Prior sworn testimony.
>
> The Court: In what matter, please?
>
> [Ace's attorney]: In this matter before the administrative agency.
>
> The Court: Okay.
>
> [Ace's attorney]: Page 34
>
> . . . .
>
> [Elmer's attorney]: There were three different contested case hearings in this case on different issues.
>
> The Court: Will you identify—
>
> . . . .
>
> [Ace's attorney]: Transcript January 30th of 2017.

Ace's counsel proceeded to question Elmer, without objection, about his testimony in the January 30, 2017, administrative agency hearing. Because the parties and the trial court treated the hearing transcript—which was raised and discussed by Ace's

–10–

counsel at trial—as if it had been admitted into evidence, we conclude it was "for all practical purposes, admitted." *Schott Pelley P.C. v. Wynne*, 578 S.W.3d 694, 703 (Tex. App.—Dallas 2019, pet. denied) (quoting *Travelers Indem. Co. of R.I. v. Starkey*, 157 S.W.3d 899, 904 (Tex. App.—Dallas 2005, pet. denied)). Ace, however, did not include the transcript or record from that hearing in the record on appeal.

Because the burden was on Ace to ensure the record on appeal is complete, it is presumed that the omissions support the trial court's judgment. On that basis alone, we must affirm the trial court's judgment. *See Starkey*, 157 S.W.3d at 904–05; *Sandoval v. Comm'n for Lawyer Discipline*, 25 S.W.3d 720, 722 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).

### The Evidence Was Sufficient To Support The Judgment

Even if Ace had not failed to provide a complete record on appeal, the trial court still did not err because the evidence was sufficient to support the judgment. In a workers' compensation case, the party seeking judicial review of an appeals panel decision has the burden of proof by a preponderance of the evidence. TEX. LAB. CODE § 410.303. While Ace concedes that—as the party appealing the administrative findings—it had the burden of proof in the trial court, it argues that after it presented Dr. Brylowski's expert report and deposition testimony, the burden shifted back to Elmer to present expert testimony to contradict Dr. Brylowski and establish a positive connection between the work injury and Elmer's depression,

–11–

anxiety disorder, and chronic pain syndrome. According to Ace, because Elmer did not present contradictory expert testimony, its expert witness conclusively established the lack of causation. We disagree.

Under a sufficiency analysis, Ace's expert testimony "must be examined in the context of asking whether" a reasonable fact finder could have "disregarded it or reached a contrary result" or whether a reasonable fact finder could have "believed the evidence favorable to" Elmer. *See State Office of Risk Management v. Ribble*, No. 03-12-00084-CV, 2014 WL 4058936, at *2 (Tex. App.—Austin Aug. 13, 2014, no pet.) (mem. op.). "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller*, 168 S.W.3d at 827.

We reject Ace's argument the trial court erred by considering the Decision in reaching its judgment. To the contrary, the trial court properly considered the Decision, which was attached to Elmer's trial brief on judicial review of the Decision, and part of the trial court's record. TEX. LAB. CODE § 410.304(b); *Simon*, 980 S.W.2d at 737 n.4 ("A trial court must consider the Appeals Panel decision in reaching a judgment.").

The circumstances in this case are remarkably similar to those in *Liberty Mutual Insurance Co. v. Burk*, 295 S.W.3d 771 (Tex. App.—Fort Worth 2009, no pet.). In *Burk*, Liberty Mutual had attached the appeals panel decision to its original petition, but the decision was not admitted into evidence at trial. Only Roy Burk

(the injured worker) and Dr. Leonard Hershkowitz (Liberty Mutual's retained expert witness) testified at trial. Liberty Mutual argued—as Ace does here—that:

> (1) because the appeals panel decision was not admitted into evidence, it was "not evidence that can support the trial court's judgment,"
>
> (2) because "Dr. Hershkowitz's testimony was uncontroverted [it was] therefore conclusive,"
>
> (3) "there [was] no evidence to support the trial court's judgment because Burk did not offer testimony from a medical expert at trial . . . [and] expert medical testimony is required where the injury or condition is beyond the scope of common knowledge and experience of the fact finder," and
>
> (4) the evidence therefore was insufficient to support the trial court's finding that Burk's work-related injury caused his polyneuropathy and foot ulcerations.

Rejecting Liberty Mutual's arguments and concluding the evidence was legally sufficient to support the trial court's finding that Burk's work-related injury caused his polyneuropathy and foot ulceration, the Forth Worth court of appeals stated:

> "It is well recognized that a trial court may take judicial notice of its own records in a cause involving the same subject matter between the same, or practically the same, parties." *Sierad v. Barnett*, 164 S.W.3d 471, 481 (Tex. App.—Dallas 2005, no pet.) . . . . Once the trial court took judicial notice of the appeals panel decision, it was evidence in the case that could potentially support the trial court's judgment. . . .

*Burk*, 295 S.W.3d at 779.

The *Burk* court also rejected the exact argument made by Ace in this case—that because Dr. Hershkowitz's testimony was uncontroverted by opposing expert testimony, it was conclusive:

> As the party appealing the appeals panel decision, Liberty Mutual had the burden to prove by a preponderance of the evidence that Burk's work-related injury did not cause his polyneuropathy and foot ulceration. Despite Liberty Mutual's burden of proof, *Liberty Mutual argues there is no evidence to support the trial court's judgment because Burk did not offer testimony from a medical expert at trial.* In doing so, Liberty Mutual cites cases for the proposition that expert medical testimony is required where the injury or condition is beyond the scope of common knowledge and experience of the fact finder. While the legal proposition is facially correct, *Liberty Mutual appears to ask us to apply the proposition against Burk, who did not have the burden of proof at trial, and hold that Burk presented no evidence that his work-related injury caused his polyneuropathy and foot ulceration. This we cannot do.* Instead, our inquiry must focus on whether there is any evidence in the record to support the trial court's finding that Burk's work-related injury caused his polyneuropathy and foot ulceration.

*Id.* at 778 (emphasis added). *See also Hunter v. Ford Motor Co., Inc.*, 305 S.W.3d 202, 207 (Tex. App.—Waco 2009, no pet.) ("In this case Ford did not have the burden of proof; it was not required to prove there was no defect."). Observing that "an expert's testimony may be contradicted by the testimony of other witnesses or by cross-examination of the expert witness," the *Burk* court concluded, "Dr. Hershkowitz's testimony was internally inconsistent" and therefore not conclusive. *Burk*, 295 S.W.3d at 779–80.

In this case, at the beginning of trial, the parties and the trial court explicitly acknowledged "the important thing in this case and what this trial is over is a judicial

–14–

review of a Workers' Compensation decision." The Decision was the result of the three administrative hearings raised by Ace's counsel during trial. Section 410.304 of the labor code required the trial court to consider the Decision. TEX. LAB. CODE § 410.304(b). And, the Decision was part of the trial court's record.[4] The trial court thus properly considered the Decision before rendering its judgment.

Ace also argues that Dr. Brylowski's expert report was uncontroverted and therefore conclusive. However, Elmer did not have the burden of proof, and our review must focus on whether there is any evidence in the record to support the trial court's judgment. *Burk*, 295 S.W.3d at 778. Moreover, Dr. Brylowski's expert reports admitted into evidence in the trial court refer to and/or discuss the reports and/or findings by Dr. Perish, Dr. Overman, Dr. Pazarella, and/or Ms. Hufnagel, placing their findings in favor of Elmer squarely before the trial court.[5] Dr. Brylowski's expert report states:

- "There is a neuropsychological diagnostic interview by Tommy Overman. He opined there is a pain disorder associated with psychological factors and a general medical condition . . . ."

- "There is a reference to recommendation for psychiatric referral because Tommy Overman agrees that his depression is caused by his injury related issues (PDF page 56/96). However, review of systems states 'no anxiety and no depression'.

---

[4] "A trial court may take judicial notice of the records in its own court filed in the same case, with or without the request of a party." *In re K.F.*, 402 S.W.3d 497, 505 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). Here, we may presume the trial court took judicial notice of the Decision, which was part of the record in this case. *Id.*

[5] Dr. Perish, Dr. Overman, Dr. Pazarella, and Ms. Hufnagel are referenced in the "SUMMARY OF RECORDS" section of Dr. Brylowski's expert report.

–15–

**Examiner comment:** Inconsistency not explained. Nonetheless, there is psychiatry referral."

- "There is an LPC evaluation that is reviewed. Chronic pain, depression, and anxiety are opined on Axis I."

- "There is reference to being referred to pain management because of ongoing pain complaints by Dr. Zavala. . . . Pain again is rated at 9/10 by the physical therapist."

- "After the designated doctor examination, physician at Concentra shows blood pressure at 152/110. There is reference to major depressive disorder, status post rotator cuff surgery. There is reference to awaiting impairment rating and psych referral."

- "The claimant reports he is up and down all night. He reports he wakes up sweating. He reports he typically wakes with stabbing pain in both shoulders. He reports he does snore and his wife wakes him up. He reports it is not often, primarily when he is restless. He reports his weight has increased. He is gaining weight. He eats more when he is depressed an anxious. He reports that riding his bike helped him but he cannot do that now without his pain medicines. He reports that biking helps still his mind."

Dr. Brylowski's expert report noted the "DESIGNATED DOCTOR EXAMINER DEFINED INJURY; CONDITIONS; DIAGNOSES" included "Anxiety disorder[,] Chronic Pain syndrome[, and] Depression."

In fact, Ace's counsel himself raised Dr. Panzarella's findings at trial. For example, Ace's attorney stated during trial:

- "The DWC appointed a doctor, he assigned an impairment rating which was disputed, which is why we're here in court."

- "[Elmer] had a knee surgery and shoulder surgery and then went in January 2015 to a designated doctor from the Division to get a certified Maximum Medical Improvement and an impairment rating signed."

–16–

Moreover—as was the case in *Burk*—Dr. Brylowski's expert report was internally inconsistent. While his expert report stated that his testing showed Elmer was not overreporting his symptoms and some people with similar testing results tended to experience anxiety, depression, and withdrawal from every day activities, it also stated his testing was consistent with overreporting by Elmer which therefore invalidated a mental and behavioral impairment rating. Dr. Brylowski's expert report conceded his testing results on depression and anxiety were "consistent with multiple possibilities." It also stated that Elmer's clinical syndromes "included anxiety," "posttraumatic stress," "thought disorder and major depression," and observed:

> The F, FB, and FP scores were 102, 107, 64 respectively. In general, F-scale scores over 65 are seen in people with emotional turmoil including anxiety and depression, feelings of sadness and hopelessness and a self-perception of being unable to cope with the stresses and strains of life."

Dr. Brylowski's opinion that although Elmer "has significant degenerative changes in his knee and bilateral shoulders," which are "painful conditions," he has a zero percent mental and behavioral impairment was contrary to other experts' findings as described in Dr. Brylowski's expert report and to Elmer's trial testimony. To the extent the trial court was presented with conflicting evidence, it was free to believe one witness and disbelieve others and resolve conflicts in testimony of any witness. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986).

–17–

In its second issue, Ace argues the trial court erred in finding Elmer's date of MMI is June 21, 2016, with an impairment rating of forty-five percent because the trial court failed to adopt the only valid impairment rating submitted into evidence as mandated by the labor code. In a judicial review case, the court or jury must adopt the specific impairment rating of one of the physicians in the underlying administrative case. *See* TEX. LAB. CODE § 410.306(c); *Ballard v. Arch Ins. Co.*, 478 S.W.3d 950, 959 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *Bell v. Zurich Am. Ins. Co.*, 311 S.W.3d 507, 511 (Tex. App.—Dallas 2009, pet. denied). In other words, the requirement that the impairment rating match one of the physicians' findings is part of the substantive statutory scheme. *Bell*, 311 S.W.3d at 511. Thus, the fact finder must adopt the specific rating of one of the physicians in the case. TEX. LAB. CODE § 410.306(c). Evidence of extent of impairment is limited to that presented to the Division, unless the court makes a threshold finding that the claimant's condition has changed substantially, in which case new evidence may be introduced. *Ballard*, 478 S.W.3d at 959. Here, the trial court adopted the impairment rating and opinions of Dr. Panzarella, as expressed in the Decision. For the reasons stated above, the evidence supports the trial court's conclusion that the date of MMI is June 21, 2016, and the impairment rating certified for the entire injury is forty-five percent.

In the first part of its fourth issue, Ace argues the trial court did not enter a valid judgment because it was based on facts not in evidence and with "no clear

rationale or justification." For the reasons stated above, we conclude the trial court's judgment was based on facts in evidence and with clear rationale and justification, and therefore the judgment was valid.

Viewing the evidence in the light most favorable to the trial court's verdict, we conclude there was more than a scintilla of evidence supporting the trial court's findings. *See City of Keller*, 168 S.W.3d at 826–27. We resolve Ace's first and second issues, and the first part of Ace's fourth issue, against it.

## Attorney's Fees

In its third issue, Ace challenges the trial court's award of attorney's fees because Elmer should not have prevailed at trial. Because we affirm the trial court's judgment, we need not address this argument. Alternatively, Ace contends Elmer waived attorney's fees by not presenting any evidence of fees at trial, by requesting fees in a post-judgment motion, and by failing to designate an expert on attorney's fees during the discovery period; and the trial court erred by awarding attorney's fees without holding a hearing and by failing to give Ace notice of the order awarding attorney's fees.

### *Analysis*

The Texas Labor Code makes the insurer liable for the claimant's attorney's fees when the insurer seeks judicial review of compensability or eligibility issues and the claimant prevails. TEX. LAB. CODE § 408.221(c) ("an insurance carrier that seeks judicial review . . . of a final decision of the appeals panel regarding

–19–

compensability or eligibility for, or the amount of, income or death benefits *is liable* for reasonable and necessary attorney's fees . . . incurred by the claimant . . . if the claimant prevails on an issue on which judicial review is sought by the insurance carrier") (emphasis added); *see also Commerce & Indus. Ins. Co. v. Ferguson-Stewart*, 339 S.W.3d 744, 747 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("Under section 408.221(c) of the Labor Code, an insurance carrier that seeks judicial review of an appeals panel decision is liable for a claimant's reasonable and necessary attorneys' fees as a result of the appeal if the claimant prevails on an issue on which the carrier seeks judicial review."). In awarding attorney's fees, the trial court must consider:

> (1) the time and labor required;
>
> (2) the novelty and difficulty of the questions involved;
>
> (3) the skill required to perform the legal services properly;
>
> (4) the fee customarily charged in the locality for similar legal services;
>
> (5) the amount in controversy;
>
> (6) the benefits to the claimant that the attorney is responsible for securing; and
>
> (7) the experience and ability of the attorney performing the services.

TEX. LAB. CODE § 408.221(d).

In his "Original Answer Counter-Claim and Request for Disclosures," Elmer pleaded for attorney's fees, costs of court, and expenses through trial and appeal.

Elmer did not, however, designate Kay Goggin, his attorney, as an expert witness. In his trial brief, filed in the trial court on December 17, 2018, Elmer asserted Ace was liable for his attorney's fees should he prevail in this case, stating, "If the claimant prevails in this case, liability for payment of fees is shifted to the Insurance Carrier. Claimant filed a Counter-Claim for such action."

The trial court's January 3, 2019 judgment awarded Elmer unspecified attorney's fees and costs of court and stated, "Attorney fees are due and payable to attorney Kay E. Goggin within 30 days of the finality of this judgment." On January 11, 2019, Goggin filed an affidavit in the form of a verified motion for statutory attorney's fees which:

- swore that the facts stated in the application for attorney's fees were correct;

- described reason for and amount of expenses incurred;

- stated she expended 58 hours from June 26, 2017, through January 11, 2019, on Elmer's case;

- described with specificity the tasks she performed for Elmer's case, and addressed the novelty and difficulty of the questions involved, the skill required to perform the legal services, and her qualifications to handle the issues in this case;

- stated her hourly rate is $350, described the fee customarily charge in Texas for similar legal services, explained with specificity why her hourly rate was a reasonable fee in Texas and in Dallas County, described her experience and abilities, and attached a curriculum vitae; and

- addressed the amount involved in the controversy and the benefits to Elmer that she secured.

Goggin's application requested an attorney's fee award in the amount of $20,400; an additional $7,500 in the event Ace unsuccessfully appealed this matter to this Court; and an additional $7,500 for an appeal to the Texas Supreme Court with an additional $7,000 for oral argument and "for whatever else" she and Elmer were "justly entitled."

Despite that the trial court's judgment ordered Ace to pay attorney's fees to Goggin, Ace did not file response to Goggin's verified motion for attorney's fees, a motion for continuance, or a motion to exclude Goggin on the grounds of surprise, prejudice or failure to provide underlying data as to attorney's fees. Nor did Ace request findings on the amount of fees. On January 15, 2019, before expiration of its plenary power,[6] the trial court awarded Goggin the attorney's fees requested in her verified motion "[a]fter consideration of the written evidence of time and expenses, with support of the factors under Texas Labor Code § 408.221." On February 14, 2019, Ace filed a motion to modify the order on attorney's fees, which was overruled by operation of law.

Goggin submitted evidence on the issue of statutory attorney's fees by filing an affidavit in the form of a verified motion.[7] *See Bullet Concrete Materials, Inc. v. TexogaTechs. Corp.*, No. 09–11–00162–CV, 2012 WL 586676, at *3 (Tex. App.—

---

[6] *See* TEX. R. CIV. P. 329b.

[7] Because this was a bench trial and not a jury trial, Ace was not entitled to have the attorney's fees issue determined by a jury.

Beaumont, Feb. 23, 2012, no pet.) (quoting *Cochran v. Wool Growers Cent. Storage Co.*, 166 S.W.2d 904, 908 (Tex. 1942)) (generally, "[W]here the testimony of an interested witness is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct, and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon, it is taken as true, as a matter of law."). We conclude Ace's complaint that Elmer did not submit evidence or expert witness testimony on the issue of attorney's fees fails.

Ace also complains Goggin was not designated as an expert witness prior to trial. In this case, the trial court's consideration of Goggin's affidavit did not result in unfair surprise or prejudice to Ace because section 408.221(c) of the labor code makes the insurer liable for the claimant's attorney's fees when the insurer seeks judicial review of compensability or eligibility issues and the claimant prevails; Elmer's pleadings included a request for attorney's fees from the lawsuit's inception; the trial court's judgment ordered Ace to pay attorney's fees to Goggin in an unspecified amount "within 30 days of the finality of this judgment"; Ace did not object to the trial court's attorney's fees award in the judgment or file a motion for continuance; and Ace did not file a motion to exclude Goggin's affidavit on attorney's fees. *See Beard Family P'ship v. Commercial Indem. Ins. Co.* 116 S.W.3d 839, 850 (Tex. App.—Austin 2003, no pet.). We conclude Ace waived this issue for review.

The final judgment was entered on January 3, 2019. Ace did not object to or otherwise complain about the inclusion of the fee in the judgment. On January 11, 2019, Goggin's filed her verified motion for attorney's fees. Even after the trial court entered its order on Elmer's attorney's fees on January 15, 2019, Ace did not respond until February 14, 2019. In its motion to modify order on attorney's fees, Ace did not complain the fees awarded were not necessary or unreasonable. The record on appeal does not show Ace presented any evidence rebutting the reasonableness of the fees. We conclude that under the circumstances of this case, the trial court did not abuse its discretion by considering Goggin's affidavit and ordering Ace to pay attorney's fees directly to Goggin. *See Holland v. Fidelity & Dep. Co. of Md.*, 623 S.W.2d 469, 471 (Tex. App.—Corpus Christi 1981, no pet.). We resolve Ace's third issue against it.

We affirm the trial court's judgment.

/Ken Molberg//

KEN MOLBERG
JUSTICE

190386f.p05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ACE AMERICAN INSURANCE
COMPANY, Appellant

No. 05-19-00386-CV     V.

CLAYTON D. ELMER, Appellee

On Appeal from the 14th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-17-06888.
Opinion delivered by Justice
Molberg. Chief Justice Burns and
Justice Carlyle participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee CLAYTON D. ELMER recover his costs of this appeal from appellant ACE AMERICAN INSURANCE COMPANY.

Judgment entered this 15th day of September, 2020.